UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
STEPHEN CARB AS TRUSTEE OF                  :
LOLLYTOGS, INC. TRUST,                            :
                                                             :
                        Plaintiff,                          :
                                                             :           09 Civ. 2980 (RMB) (KNF)
            -against-                                   :
                                                             :           **ORDER**
LINCOLN BENEFIT LIFE COMPANY, INC.,   :
                                                             :
                        Defendant.                     :
------------------------------------------------------------X

**I.       Introduction**

On April 28, 2009, Stephen Carb, as Trustee of Lollytogs, Inc. Trust ("Plaintiff") filed an

amended complaint ("Amended Complaint") against Lincoln Benefit Life Company, Inc.

("Defendant") in diversity, see 28 U.S.C. § 1332, and pursuant to the federal Declaratory

Judgment Act ("DJA"), 28 U.S.C. § 2201 et seq., alleging, among other things, that in or about

May 2007, Defendant improperly denied Plaintiff's request to convert two life insurance policies

issued in 1999 from term life policies into either "Flexible Premium Adjustable Life Plan[s]"

or "Whole Life Plan[s]" ("Permanent Insurance").  (Am. Compl., dated Apr. 28, 2009, ¶¶ 47–49,

51–53.)  The Amended Complaint seeks, among other things, damages for breach of contract

based upon Defendant's failure to convert the two policies at Plaintiff's request; a declaration

that Defendant be required "to allow Plaintiff to convert [the two policies] effective October 1,

2009 [and] November 8, 2009"; and "reformation of [the two policies] so as to provide for a

right of conversion prior to the expiration of the level premium period[s]," i.e., on October 1,

2009 and November 8, 2009.  (Am. Compl. ¶¶ 49, 53, 56, 58, 60, 63, 69, 75.)

On June 23, 2009, Defendant filed a motion to dismiss the Amended Complaint pursuant

to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.") arguing, among

other things, that: (1) Plaintiff does not "sufficiently allege . . . the essential element of an actual breach"; (2) "Plaintiff was not entitled to convert the Policies under the Policies' clear and unequivocal provisions [and] the [Amended] Complaint states no basis for a declaration compelling [Defendant] to allow a conversion expressly not permitted under the Policies"; and (3) Plaintiff "fails to set forth any allegations of mutual mistake [or] unilateral mistake" that would support reformation. (Def's. Mem. of Law in Supp. of Mot. to Dismiss, dated June 23, 2009 ("Def. Mem."), at 4–7.)

On July 22, 2009, Plaintiff filed an opposition arguing, among other things, that: (1) Defendant or its agents acknowledged the existence of Plaintiff's conversion right in writing in 2000, 2002, and 2003; (2) Defendant's communications "caused Plaintiff to rely to its detriment" with regard to the two policies; and (3) reformation is required because Defendant "inadvertently issued the Policies with an age condition that was not consistent with the right to convert." (Pl. Mem. of Law. in Opp'n to Def's. Mot. to Dismiss, dated July 22, 2009 ("Pl. Mem."), at 5–6, 8–12.)

On August 13, 2009, Defendants filed a reply arguing, among other things, that "Plaintiff has not [alleged] that the Policies have been properly modified pursuant to the Modification Provision [contained in the Policies, and as] such, there is no right of conversion under the policy terms." (Defs.' Reply Mem. of Law in Further Supp. of Mot. to Dismiss, dated Aug. 13, 2009 ("Reply"), at 2.)

The parties agreed to waive oral argument.

**For the reasons set forth below, Defendants' motion to dismiss the Amended Complaint is granted in part and denied in part.**

**II.     Background**

2

For the purposes of this motion, the allegations of the Amended Complaint are taken as true. See Egan v. Marsh & McLennan Cos., Inc., No. 07 Civ. 7134, 2008 WL 245511, at *4 (S.D.N.Y. Jan. 30, 2008).

On or about October 1, 1999, Defendant issued an insurance policy insuring the life of Samuel Gindi ("Gindi" or "the insured"), who is now 85 years old, in the amount of $3,000,000.00 for the period October 1, 1999 to October 1, 2019 (the "$3 million Policy"). (Am. Compl. ¶ 36.) On or about November 8, 1999, Defendant issued a second insurance policy insuring Gindi's life in the amount of $26,000,000.00 for the period November 8, 1999 to November 8, 2019 (the "$26 million Policy," and, together with the $3 million Policy, the "Policies"). (Am. Compl. ¶ 37.)

Plaintiff is the Trustee of a Shareholder Trust (the "Lollytogs Trust") entered into amongst the shareholders of Lollytogs, Ltd. ("Lollytogs"), a wholesaler and distributor of children's apparel. (Am. Compl. ¶¶ 6–7.) Plaintiff alleges that Lollytogs owns and maintains the Policies and that Plaintiff is the sole payee and named beneficiary of the Policies. (Am. Compl. ¶¶ 34, 35.) Upon Gindi's death, Plaintiff is "to deliver [any] proceeds" from the Policies to Lollytogs. (Am. Compl. ¶ 35.)

Pursuant to their terms, the Policies can be converted from term life to Permanent Insurance upon the earlier of (i) the insured's reaching the age of seventy or (ii) the end of the relevant "level premium period," which is October 1, 2009 for the $3 million Policy and November 8, 2009 for the $26 million Policy. (Am. Compl. ¶¶ 38–40.) When the Policies were issued, in 1999, Gindi was already seventy-five years old, rendering conversion of the policies under condition (i) above impossible. (Am. Compl. ¶ 41.)

Plaintiff alleges that shortly after the Policies were issued, Defendant confirmed in

3

writing, on or about July 13, 2000, that as a result of the impossibility of any conversion

occurring as of Gindi's 70th birthday (since Gindi was already 75), the "[P]olic[ies] will have

conversion privileges up to the term of the polic[ies]." (Decl. of Scott J. Kantor, undated

("Kantor Decl."), at Ex. A (Ltr. from Lydia S. Trevino to Marie LNU, dated July 13, 2000); see

also Am. Compl. ¶ 43.) Plaintiff further alleges that, on or about February 26, 2003, Defendant

acknowledged, in writing, its July 13, 2000 representations "but sought to change the terms and

conditions contained in the [P]olicies by only honoring the right of conversion if exercised

within . . . thirty days from the date of the [February 26] letter." (Am. Compl. ¶ 44; see also

Kantor Decl. Ex. B (Ltr. from Vicki Hansen and Stan Shelley to Laura LNU, dated Feb. 26,

2003) ("Due to this misinformation that was provided on July 13th, 2000, we will honor a

conversion of both of the [P]olicies within 30 days of this letter.").) Plaintiff alleges that he

"refused to accept any such modification of [his] conversion rights[.]" (Am. Compl. ¶ 45.)

On or about May 29, 2007, Plaintiff notified Defendant, by letter, of his intent to convert

the Policies from term life to Permanent Insurance. (Am. Compl. ¶¶ 47, 48; see also Kantor

Decl. Ex. C (Ltr. from Stephen A. Carb to Lincoln Benefit Life Company, dated May 29, 2007)

("It is the intention of the undersigned to convert both of these [P]olicies to [P]ermanent

[I]nsurance . . . in accordance with the [P]olicies.").) Defendant denied conversion as to both

Policies because the opportunity to convert as of Gindi's turning seventy had long passed. (Am.

Compl. ¶¶ 48, 52; see also Kantor Decl. Ex. D (Ltr. from Jill Cary to Stephen Carb, dated Nov.

8, 2007) ("These policies are not convertible due to the insured's age.").)

### III.   Legal Standard

When considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court

"must accept as true all of the factual allegations contained in the complaint and draw all

reasonable inferences in plaintiff's favor." Egan, 2008 WL 245511, at *4 (internal quotations

omitted). "[W]here a document is not incorporated [into the complaint] by reference, the [C]ourt

may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,'

which renders the document 'integral' to the complaint." Chambers v. Time Warner, Inc., 282

F.3d 147, 152–53 (2d Cir. 2002); see also Feder v. MacFadden Holdings, Inc., 698 F. Supp. 47,

50 (S.D.N.Y. 1988).

    At the same time, "a plaintiff's obligation to provide the grounds of his entitlement to

relief requires more than labels and conclusions, and a formulaic recitation of the elements of a

cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal

quotations and citation omitted); see also Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).

"[P]laintiff must provide the grounds upon which his claim rests through factual allegations

sufficient 'to raise a right to relief above the speculative level.'" ATSI Commc'ns, Inc. v. Shaar

Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007) (quoting Twombly, 550 U.S. at 555).

## IV.    Analysis

### (1)    Breach of Contract

    Defendant argues, among other things, that "by the express terms of the Policies, Plaintiff

never had any right of conversion" and, therefore, Defendant "did not breach the terms of the

Policies by refusing Plaintiff's request for conversion in 2007." (Def. Mem. at 4, 5.)  Plaintiff

counters, among other things, that "Defendant was aware when it issued the Policies that Gindi

was seventy-five years old and notwithstanding same, reiterated in writing Plaintiff's right to

convert the [P]olicies," and that "[a]ccordingly, Defendant should be estopped from taking a

position to the contrary." (Pl. Mem. at 5.)

    "Under New York law, it is axiomatic that in order to prevail on a breach of contract

5

claim, a plaintiff must establish all of the following four elements:  [i] the existence of a valid

contract; [ii] plaintiff's performance of the contract; [iii] defendant's material breach of the

contract; and [iv] resulting damages." Hermandad y Asociados, Inc. v. Movimiento Misionero

Mundial, Inc., No. 100211/06, 2009 WL 765036, at *3 (N.Y. Sup. Ct. Mar. 6, 2009); see also

Terwilliger v. Terwilliger, 206 F.3d 240, 245–46 (2d Cir. 2000) (quoting First Investors Corp. v.

Liberty Mut. Ins. Co., 152 F.3d 162, 168 (2d Cir. 1998)).  Furthermore, "Plaintiff must establish

the provisions of the contract the defendant is alleged to have breached." NGL Group, LLC v.

Guinsburg, No. 11173–05, 2009 WL 2337969, at *4 (N.Y. Sup. Ct. Aug. 8, 2006).

Accepting as true all of Plaintiff's factual allegations and drawing all inferences in

Plaintiff's favor, the Court finds that Plaintiff adequately sets forth a claim for breach of contract.

See Bell v. Manhattan Motorcars, Inc., No. 06 Civ. 4972, 2008 WL 2971804, at *3 (S.D.N.Y.

Aug. 4, 2008).  First, the contracts in question are the written Policies.[1]  (Am. Compl. ¶¶ 36, 37.)

Second, Plaintiff alleges that he "has performed all of [his] obligations necessary under and

pursuant to" the Policies.  (Am. Compl. ¶¶ 55, 60.)  Third, Plaintiff states that "[p]ursuant to the

terms of the subject [P]olicies, upon [Gindi's] reaching the age of seventy or the end of the level

premium period[,] whichever is earlier, the owner of the policy is permitted to convert the

subject policies from a Term Life Policy into a Flexible Premium Adjustable Life Plan or a

Whole Life Plan then sold by Defendant." (Am. Compl. ¶ 38.)  Plaintiff further alleges that

"[n]otwithstanding the fact that Gindi was over seventy years of age at the time when the

[P]olicies were issued, on or about July 13, 2000, Defendant sent a written communication to

---

[1]      Plaintiff apparently argues that the Policies were modified by subsequent writings,
including, among other things, Defendant's July 13, 2000 letter.  (Am. Compl. ¶ 43; Kantor
Decl. Ex. A.)

Plaintiff confirming the right of conversion during the level premium period."[2] (Am. Compl.

¶ 43).  Plaintiff thus appears to contend that, "[e]ssentially, the present [case] involves a valid,

enforceable modification of an earlier agreement by a later one."  Credit Suisse First Boston

Corp. v. Pitofsky, 824 N.E.2d 929, 932 (N.Y. 2005); (see also Am. Compl. ¶¶ 48, 52); RJE Corp.

v. Northville Indus. Corp., 198 F. Supp. 2d 249, 263 (E.D.N.Y. 2002) (applying New York law)

("When interpreting an ambiguous contract, the subsequent conduct of the parties also is relevant

with regard to the parties' intention."); Addison v. Addison, 595 N.Y.S.2d 766, 768 (1st Dep't

1993) ("[The initial contract] together with the parties' subsequent writings and actions clearly

evidenced both the expectations and the respective duties of the parties . . . .").  Whether Plaintiff

is ultimately correct "rests on issues of fact that cannot be decided on a motion to dismiss [and

presents] questions best decided after both parties have an opportunity to present evidence."

Crespo v. N.Y.C. Police Comm'r, 930 F. Supp. 109, 116 (S.D.N.Y. 1996); (see also Reply at 2.)

Fourth, Plaintiff adequately alleges that he was damaged by Defendant's breach.  (Am.

Compl. ¶¶ 57–58 ("As a result of Defendant's breach of contract, Plaintiff will not be able [to]

exercise his conversion rights under the [$3 million] Policy prior to the expiration of the level

premium period of October 1, 2009.  As a result of this breach, Plaintiff will be damaged in an

amount in excess of $1,000,000.00."), 62–63 ("As a result of Defendant's breach of contract,

Plaintiff will not be able [to] exercise his conversion rights under the [$26 million] Policy prior

to the expiration of the level premium period of November 8, 2009.  As a result of this breach,

Plaintiff will be damaged in an amount in excess of $9,000,000.00."), C, D.)

**(2)     Declaratory Judgment**

---

[2]     Defendant's July 13, 2000 letter may have been a response to an inquiry made in late
1999 or early 2000 by an insurance broker who represented the insured in connection with the
Policies.  (Aff. of James W. Wilson, dated July 13, 2009 ("Wilson Aff."), at ¶¶ 6–8.)

Defendant argues, among other things, that "the [Amended] Complaint states no basis for a declaration compelling [Defendant] to allow a conversion expressly not permitted under the Policies." (Def. Mem. at 6.)  Plaintiff counters, among other things, that he relied on Defendant's representations in coming to "the reasonable expectation that [the Policies] contained a right to convert . . . into Whole Life Plans during the level premium period[.]"  (Pl. Mem. at 6.)

The Declaratory Judgment Act "sets forth two prerequisites to the issuance of declaratory relief:  [i] appropriate federal jurisdiction and [ii] the existence of an actual case or controversy." Allen v. Stephan Co., No. 96 Civ. 536, 1996 WL 551708, at *1 (S.D.N.Y. Sept. 26, 1996); see also Corresp. Servs. Corp. v. First Equities Corp. of Fla., 442 F.3d 767, 769 (2d Cir. 2006) ("[T]he Declaratory Judgment Act does not by itself confer subject matter jurisdiction on the federal courts.") (citations omitted); Preiser v. Newkirk, 422 U.S. 395, 402 (1975) (a plaintiff must allege facts sufficient to show "that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment"); N.Y. Civil Liberties Union v. Grandeau, 453 F. Supp. 2d 800, 805 (S.D.N.Y. 2006).

The Court finds that the declaratory judgment claim is pled sufficiently to state a claim upon which relief may be granted.  Mercer Capital, Ltd. v. U.S. Dry Cleaning Corp., No. 08 Civ. 05763, 2009 WL 2163598, at *4 (S.D.N.Y. July 21, 2009).  First, Plaintiff alleges subject matter jurisdiction because Plaintiff is a New York resident and Defendant is a Nebraska corporation, and the alleged amount in controversy is greater than $75,000.  (See Am. Compl. ¶¶ 2, 5–6, 58, 63); see also 28 U.S.C. § 1332; Wells Fargo Bank, N.A., Trustee v. Konover, No. 3:05 Civ. 1924, 2009 WL 2710229, at *3 (D. Conn. Aug. 21, 2009) ("As in this case [Plaintiff] is suing as

Trustee, the [P]laintiff's citizenship for diversity purposes will be [the Trustee's] citizenship if [the Trustee] possesses 'customary powers to hold, manage, and dispose of assets,' and is therefore the real and substantial party to the controversy.") (quoting <u>Navarro Sav. Ass'n v. Lee</u>, 446 U.S. 458, 464 (1980)).

Second, there is a clear dispute between Plaintiff and Defendant as to Plaintiff's conversion rights, if any, under the Policies. (<u>See</u> Def. Mem. at 4 ("Plaintiff never had any right of conversion and [Defendant] did not breach the terms of the Policies by refusing Plaintiff's request for conversion in 2007."); Pl. Mem. at 1 ("On July 12, 2000, Defendant confirmed that the Policies were convertible up to the term of the policy.").) And, Plaintiff's claim is "live" and actual, not "moot" or "academic." <u>Stokes v. Vill. of Wurtsboro</u>, 818 F.2d 4, 5 (2d Cir. 1987). "While the facts underlying both the [breach of contract] and [declaratory judgment claims] may be identical and while both claims may ultimately prove to be coextensive, it is . . . well-established that declaratory relief is alternative or cumulative and not exclusive or extraordinary." <u>Quanta Specialty Lines Ins. Co. v. Investors Capital Corp.</u>, No. 06 Civ. 4624, 2008 WL 1910503, at *6 n.7 (S.D.N.Y. Apr. 30, 2008) (quoting <u>Zurich Am. Ins. Co. v. Paxson Commc'ns Corp.</u>, No. 03 Civ. 1503, 2004 U.S. Dist. LEXIS 9093, at *6 (S.D.N.Y. May 19, 2004)). "Therefore, the court will preserve its ability to exercise its discretion to provide declaratory relief . . . at the appropriate time." <u>Zurich</u>, 2004 U.S. Dist. LEXIS 9093, at *6.

**(3)    Reformation**

Defendant argues, among other things, that "Plaintiff's [Amended] Complaint fails to set forth <u>any</u> allegations of mutual" or unilateral mistake. (Def. Mem. at 7.) Plaintiff counters, among other things, that there is a "sufficient basis for reformation of the Policies" because Defendant "issued two Policies, each providing" a "Conversion Right," but made "identical

'mistakes'" on both Policies, "inadvertently issu[ing] the Policies with an age condition that was not consistent with the right to convert." (Pl. Mem. at 7, 8.)

"Under New York law, reformation can be granted only in two circumstances: where there has been a [i] mutual mistake; or [ii] unilateral mistake coupled with fraudulent concealment by the knowing party." Widmar Co., Inc. v. Teachers Ins. & Annuity Ass'n of Am., 870 F. Supp. 524, 535 (S.D.N.Y. 1994) (citing Chimart Assocs. v. Paul, 489 N.E.2d 231, 234 (N.Y. 1986)); see also Brandwein v. Provident Mut. Life Ins. Co. of Phila., 3 N.Y.2d 491, 496 (N.Y. 1957). "[R]eformation of a contract is available for mutual mistake provided the party claiming reformation can 'show in no uncertain terms, not only that mistake . . . exists, but exactly what was really agreed upon between the parties.'" Loewenson v. London Mkt. Cos., 351 F.3d 58, 61 (2d Cir. 2003) (quoting George Backer Mgmt. Corp. v. Acme Quilting Co., 365 N.E.2d 1062, 1066 (N.Y. 1978)).

Plaintiff's allegations that both parties knew Mr. Gindi's correct age when the Policies were entered into, even though the Policies "permit[] conversion upon reaching the age of seventy or the end of the level premium period, whichever is earlier," (Am. Compl. ¶¶ 66–68, 72–74), do not establish mutual mistake. Rather, they point to a "question of ambiguity . . . [on] the face of the agreement" that this Court would have to resolve "[t]o order reformation[.]" Collins v. Harrison-Bode, 303 F.3d 429, 435 (2d Cir. 2002) (applying New York law). Because "in the present case . . . it is impossible to determine what the parties actually agreed upon absent [findings of fact,] it is therefore impossible to reform the contract" until the breach of contract claim is adjudicated, Global Switching Inc. v. Kasper, No. 06 Civ. 412, 2006 WL 1800001, at *14 n.11 (E.D.N.Y. June 28, 2006) (citing Koam Produce, Inc. v. DiMare Homestead, Inc., 213 F. Supp. 2d 314, 326 (S.D.N.Y. 2002) (applying New York law)), and the appropriate

"contractual 'remedy' is not 'reformation' . . . but merely an action to enforce the contract."

Lieberman v. Emigrant Mortgage Co., 436 F. Supp. 2d 357, 365 (D. Conn. 2006). "Plaintiff[]

also fail[s] to state a claim for unilateral mistake, as the complaint does not allege fraud[.]"

Greater N.Y. Mut. Ins. Co. v. U.S. Underwriters Ins. Co., 827 N.Y.S.2d 147, 149 (1st Dep't

2007); (see also Def. Mem. at 7.)

**V.      Conclusion and Order**

For the foregoing reasons, Defendants' motion to dismiss the Amended Complaint [#10]

is granted in part as to Plaintiff's claims for reformation and denied in part as to Plaintiff's

claims for breach of contract and declaratory judgment.

As previously scheduled, the parties are to appear at a status and settlement conference

on Monday, November 9, 2009, at 9:00 a.m., in Courtroom 21B, 500 Pearl Street, New York,

New York, 10007.

**The parties are directed to engage in good faith settlement negotiations prior to the**

**conference.**

Dated: New York, New York
       September 22, 2009

_____
**RICHARD M. BERMAN, U.S.D.J.**

11