Richard M. Resnik (RR-1407)
Jay W. Cho (JC-0102)
SEYFARTH SHAW LLP
620 Eighth Avenue
New York, New York 10018-1405
(212) 218-5500

Attorneys for Defendant
Lincoln Benefit Life Company Inc.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

G INVESTORS HOLDING LLC as successors in : 
interest to STEPHEN CARB AS TRUSTEE OF :
LOLLYTOGS, INC. TRUST, :
 : 09-CV-2980 (RMB)(KNF)
              Plaintiff, :
 :
      vs. :
 :
 :
LINCOLN BENEFIT LIFE COMPANY INC., :
 :
              Defendant. :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## <u>DECLARATION OF VICKI HANSEN</u>

VICKI HANSEN, being duly sworn, hereby declares under penalty of perjury:

## **INTRODUCTION**

1.      I am Senior Unit Manager of defendant Lincoln Benefit Life Company Inc.

("Lincoln"). I have been employed by Lincoln since 1996 and have held the title of Senior Unit

Manager since 2001.

2.      I make this Declaration in support of Lincoln's motion seeking an order pursuant

to Fed. R. Civ. P. 56 granting Lincoln summary judgment and dismissing the amended complaint

of plaintiff G Investors Holding LLC as successors in interest to Stephen Carb as Trustee of

Lollytogs, Inc. Trust in its entirety. I make this Declaration upon my own personal knowledge

and a review of the documents provided to me.

3.      In my capacity as Senior Unit Manager, I mentor managers, manage phone representatives in Lincoln's call center and field incoming calls with inquiries from agents and other areas of the company.

**2003**

4.      In or about February, 2003, I received a phone call from an insurance agent, Laura Lendin ("Lendin") of Second Opinion Insurance Services, concerning two 20-year term insurance policies issued by Lincoln, bearing policy numbers T1133155 ("26 Million Policy") and T1125550 ("3 Million Policy") (collectively, the "Policies"), insuring the life of Samuel Gindi ("Gindi").  Copies of the Policies are attached as Exhibits K and L, respectively, to the accompanying Declaration of Stan Shelley ("Shelley Declaration").

5.      Specifically, Lendin called to seek clarification as to whether the Policies provided the insured the right to convert from term to universal life insurance.  Lendin advised me that a communication had previously been sent by a Lincoln employee misquoting the policy language relating to conversion and that other Lincoln employees had subsequently advised Lendin that no right to convert existed under the terms of the Policies.

6.      After my call with Lendin, I conducted a thorough investigation of Lendin's inquiry by reviewing the Policies and policy files, including electronic notepads regarding the Policies, and discovered that a former Lincoln customer service representative, Lydia Trevino, sent a fax to a "Marie" on July 13, 2000, and had misquoted the language contained in the Policies.  A copy of Lydia Trevino's letter to "Marie" is attached as Exhibit M to the Shelley Declaration.

7.      My review of the Policies and policy file revealed that Gindi never possessed any right to convert since he was seventy-five years old at the time the Policies were sold, and

under the terms of these Policies, the named insured was permitted to convert the Policies <u>only</u> upon "the <u>earlier</u> of the insured's reaching the age of seventy or the end of the level premium period."

8.      Following my investigation, I discussed the matter with Stan Shelley ("Shelley") and confirmed that the Policies did not permit conversion due to Gindi's age.

9.      By letter dated February 26, 2003 (the "February 26 Letter"), Shelley and I advised Lendin that as a client accommodation we would allow the Policies to be converted from term to any whole or universal life insurance, as long as the conversion was effectuated within 30 days of the letter.  A copy of the February 26 Letter from me and Shelley to Lendin is attached as Exhibit N to the Shelley Declaration.

10.      The letter concluded with an invitation to "contact me if you have any further questions." <u>Id</u>.

11.      No representative of the insured objected to or had any comment with respect to the offer contained in the February 26 Letter.

12.      The only response from the insured to the February 26 Letter were requests for extensions of the limited window within which to convert the Policies (<u>See</u> Exhs. O and P to the Shelley Declaration).  These requests for extensions were granted by Lincoln.

13.      On August 19, 2003, the insured completed the conversion of the Policies into five separate universal life policies (the "Universal Policies") (<u>See</u> Exh. Q to the Shelley Declaration).

14.      In September 2003, Plaintiff sent Lincoln the initial premium payments for the Universal Policies.  (Exh. R)

15.     Pursuant to the terms of the converted policies, the insured had twenty (20) days from the delivery of the Universal Policies to exercise their right to "free look" the Policies.  The term "free look" in insurance parlance means the period of time in which the insured has the legal right to examine a newly issued policy and return it for a full refund of premium if the policy is not satisfactory for any reason.

16.     On September 8, 2003 -- the last day of the twenty (20) day free look period -- Lincoln received a letter (the "September 8 Letter"), purporting to be on the letterhead of the Trustee for the subject Policies (i.e. Carb) advising Lincoln that "I am utilizing my 20 day free look privilege" and "am returning these [Universal Policies] back", and requesting that Lincoln "revert" the Policies back to the original term policies.

17.     In connection with the exercise of the "free look" provisions of the Universal Policies and the reinstatement of the term Policies, by email dated September 8, 2003, Lendin contacted me to initiate the rescission of the Universal Policies and reinstatement of the term Policies by advising me as follows:

> "I received [the September 8 Letter] today.  Please realize that I appreciate everyone's efforts on these policies, our office alone allotted several weeks of work only to end with these 20 day free looks.
>
> The agent has been struggling with two sides of the Gindi family. One side that wants the insurance and directed the payments be made and the other side that did not want the insurance purchased and insisted the trustee return the policies.
>
> They are returning the policies to me along with the original letter. I'll forward them to your attention.  Please see that the term contracts are put back inforce and the new premium is refunded as soon as possible."

A copy of the email exchange between me and Lendin, dated September 8 and 9, 2003, is attached as Exhibit V to the Shelley Declaration.

4

18.     In response, by email dated September 9, 2003, I advised Lendin as follows:

"I will get these processed today and have the old term policies restored.  Please keep in mind that the conversion we allowed on these policies was originally an error and by free looking [the Universal Policies], we will not allow a conversion in the future.  I just want to make sure that everyone involved realizes that this will not be an option in the future."

Id.

19.     Shortly thereafter, in response to my email, Lendin responded:

"Thank you, everyone is very clear on this not being available in the thank [sic] future."

A copy of the email exchange between me and Lendin, dated September 8 and 9, 2003, is attached as Exhibit W to the Shelley Declaration.

20.     In accordance with the wishes expressed in the September 8, 2003 Letter, the Universal Policies were cancelled, the premiums on the converted policies returned and the term Policies reinstated.  By letter dated September 16, 2003, Lincoln advised Carb that "the term conversion has been withdrawn per your request."  A copy of the September 16, 2003 letter to Carb is attached as Exhibit X to the Shelley Declaration.

I declare, pursuant to 28 U.S.C. § 1746, under penalty of perjury, that the foregoing is true and correct.

Executed on:   Lincoln, Nebraska
               August 24, 2011


VICKI HANSEN