UNITED STATES DISTRICT COURT      x
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| | |
|---|---|
| G INVESTORS HOLDING LLC as successors in interest to STEPHEN CARB AS TRUSTEE OF LOLLYTOGS, INC. TRUST, | :   09-CV-2980 (RMB)(KNF) : : **AFFADAVIT OF** |
| Plaintiff, | : **JAMES W. WILSON** : |
| vs. | : : |
| LINCOLN BENEFIT LIFE COMPANY INC., | : : |
| Defendant. | : |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -    x

State of New York     )
                    ) ss.:
County of New York   )

JAMES WILSON, being duly sworn, deposes and says:

1.      I am a partner at Arnone, Lowth, Wilson & Leibowitz, a life insurance brokerage firm specializing in estate planning with its primary place of business in New York State.

2.      This affidavit is submitted in opposition to the Motion by Defendant Lincoln Benefit Life Insurance Company, Inc. ("Lincoln"), which seeks summary judgment dismissing Plaintiff's complaint.

3.      I am a licensed insurance broker with almost forty years of experience working in the insurance industry.  As a result, I have worked hand in hand with many insurance carriers in the placement of all types of insurance coverage, including life insurance coverage.

4.      I have been placing life insurance coverage with Lincoln since 1999 and I am fully familiar with the industry custom and practice.

5.      Lincoln, like most insurance carriers, creates a procedure and a structure when brokers need to contact them to seek clarification or corrections to a policy, which is not an uncommon occurrence.

1

6.      Specifically, like other carriers, Lincoln instructs its brokers to contact a designated customer service representative that has been assigned by the carrier to this particular account.

7.      Depending on the nature of the inquiry, clarification can take place with a phone call, a letter per the authority of management.

8.      As such, when a written communication from a representative of the insurance company references that the information being provided is issued with the authority of an officer of the insurance company, there is no reason for me to question or second-guess the legitimacy of the information that I have received.

9.      I reviewed the numerous insurance proposals provided by Second Opinion and submitted them to the client.

10.     On or about October 1, 1999, Lincoln bound coverage to Lollytogs' designated trustee, a life insurance policy, bearing policy number 01T1133155, insuring the life of Samuel Gindi in the amount of $3,000,000.00. On or about November 8, 1999, Lincoln bound coverage to Lollytogs' designated trustee a life insurance policy, bearing policy number 01T1125550, insuring the life of Samuel Gindi in the amount of $26,000,000.00. (collectively referred to herein as the "Policies")

11.     In or about January 2000, I received copies of the Policies and forwarded them to Stephen Carb, Lollytogs designated trustee, c/o Lollytogs, 100 West 33rd Street, New York, New York.  I did not nor am I aware of the Policies being forwarded to Florida.  Thereafter, I was asked by the client whether this policy had conversion rights.

12.     As is the industry custom and practice, I contacted Lincoln's customer service department directly to get clarification with respect to the existence of conversion rights in connection with the Policies.

13.    A representative of Lincoln informed me that they would review the Policies and issue a response to my inquiry within a reasonable time.

14.    My office received a written response from Lincoln on July 13, 2000.   The communication came from Lydia Trevino of the customer service department and referenced communications between her and the Vice President of the Customer Service Department, Stan Shelly.   Based upon her communications with Mr. Shelly, Ms. Trevino responded to my inquiry assuring me that the right to convert the Policies was exercisable anytime during the ten-year level premium period.   This information as subsequently communicated to Lollytogs.

15.    Based upon the fact that this written communication was issued by Lincoln's designated customer service representative and referenced her communication with Stan Shelly, Vice President of the Customer Service Department at Lincoln, it was now clear that the Policies had a conversion right exercisable at anytime during the ten year level premium period. Accordingly, there was no need to further review the terms contained in the Policies.

16.    I have been advised that counsel for Lincoln has indicated that because Lydia Trevino was simply a customer service call center representative that her representation that the Policies had a conversion right.   I find this statement to be preposterous as to accept this statement as true, would undermine the entire custom and practice of the insurance industry.   Is not the practice of any broker to interpret policy provisions where they are unclear or coverage is uncertain.   It is up to the carrier, upon request, to make statements as to terms and conditions of the policies it has drafted and sold.   Therefore, carriers have created customer service departments and employ customer service representatives to provide brokers and other interested parties a structure wherein they can call and make inquiries as to coverage and policy interpretation and in return receive accurate and truthful answers.   In this matter, I contacted

Lincoln regarding conversion rights under the Policies and received a faxed response from Lydia Trevino a customer service representative indicating that "[w]hen speaking to Stan Shelly, Vice President of our Customer Service Department.  This Policy will have conversion privileges up to the term of the Policy."    I relied upon the response as it came from a customer service representative and originated with the Vice President of Customer Service, Stan Shelly therefore believed that these Policies had conversion rights.  To believe otherwise would be contrary to industry custom and practice as well as common sense.

17.    Furthermore, in my 40 plus years working in the insurance industry it is not industry custom and practice for an officer or president to provide responses to inquiries.  The primary conduit for information regarding clarification of the terms and condition of a policy has always been the customer service department and its customer service representatives. Therefore, I have always relied upon the representations of these customer service representatives and directed my clients to do so as well.

18.    In December 2002, as a result of an inquiry from Lollytogs with the possibility of selling the Policies on the settlement marketplace. I requested that my executive secretary, Lilly Phan, contact Second Opinion, agent for Lincoln, to obtain a more current written statement in connection with the Policies convertibility.

19.    In response to Ms. Phan's inquiry, Kourtney Harris, a Policy Owners Service Specialist at Second Opinion, provided me with the further verification and responded "[a]s per Jodi [Spicer] @ Lincoln Benefit, this policy is able to be converted to a permanent product". However, Lollytogs subsequently elected not to sell the Policies at that time.

20.    In early 2003, Mr. Sutton requested that I obtain illustrations from Lincoln regarding the premiums associated with converting the Policies to whole life at that time.  As a

result, I contacted the customer service department at Lincoln and requested premium illustrations in connection with the exercise of conversion rights under the Policies.

21.     In response, on or about February 26, 2003, my office received a letter from Lincoln signed by both its Manager, Vicki Hansen and Senior Vice President Stan Shelly, acknowledging the representations made on July 13, 2000 that the Policies had a conversion right.

22.     However, I was shocked to learn that Lincoln was now claiming that this representation was made in error.  To cure and resolve this issue Lincoln proposed therefore proposed that rather than allowing conversion of these Policies at the end of the level premium period, October 1, 2009 and November 8, 2009 respectively, if Lollytogs wanted to convert the Policies to whole or universal life plans such conversion would have to take place within thirty days.

23.     Such an about face by Lincoln was materially prejudicial to Lollytogs. While I could have advised the client to accept offers from other carrier's in 2000 if, upon initial inquiry Lincoln had informed me that conversion rights were not available under its product, replacing coverage in 2003, upon receipt of the Hansen/Shelly letter, would have been practically impossible.

24.     First of all, in 2003 Mr. Gindi was 78 years old and at that age, no term insurance would have been available to him, let alone term insurance with conversion rights.

25.     Secondly, while I may have been able to obtain a universal or whole life policy on Mr. Gindi's life in 2003, the premiums that carriers would have charged would have been so prohibitive as to make them economically unfeasible.

State Of New York
County Of New York SS
Sworn To Before Me

JAMES W. WILSON

Sworn to me on this
20 day of Sept. 2011

Notary Public

ALAN SCHNUER 01SC4991026
NOTARY PUBLIC STATE OF NEW YORK
QUALIED IN NEW YORK COUNTY
COMMISSION EXPIRES JAN 21 2014

Docket No.  09 CV 2980

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

STEPHEN CARB AS TRUSTEE OF
LOLLYTOGS, INC. TRUST

Plaintiff,

-against-

LINCOLN BENEFIT LIFE COMPANY, INC.,

Defendant.

AFFIDAVIT OF JAMES W. WILSON

*Weg and Myers, P.C.*
Attorney for Plaintiff

Office and Post office Address, Telephone
Federal plaza
52 Duane Street
NEW YORK, NEW YORK 10007
(212) 227-4210