UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
G INVESTORS HOLDING LLC as successors in
interest to STEPHEN CARB AS TRUSTEE OF
LOLLYTOGS, INC. TRUST,

                      Plaintiff,

      vs.

LINCOLN BENEFIT LIFE COMPANY INC.,

                      Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

09-CV-2980 (RMB)(KNF)

**AFFIDAVIT OF**
**RAYMOND GINDI**

State of New York    )
                            ) ss.:
County of New York  )

      RAYMOND GINDI, being duly sworn, deposes and says:

      1.      I am co-CEO of Century 21, Inc. and a former shareholder in Lollytogs, Inc. ("Lollytogs").

      2.      This affidavit is submitted in opposition to the motion of Defendant Lincoln Benefit Life Insurance Company, Inc. ("Lincoln") which seeks summary judgment dismissing Plaintiff's complaint.

      3.      Prior to 2010 various members of the Sutton family owned 50% of Lollytogs with the remaining 50% owned by various members of the Gindi family.

      4.      Ezra Sultan was and is CFO of Century 21, Inc. and represented the interests the Gindi family in connection with Lollytog's.

      5.      Pursuant to the 1993 Lollytogs Shareholders Agreement, Lollytogs was required to maintain life insurance on the life of Samuel Gindi. The death benefits from that policy were then to be used to fund a buyout of the Gindi family's 50% ownership interest in Lollytogs.

6. In 1999 I learned that Richard Sutton, contacted Jim Wilson who was a partner at Arnone, Lowth, Wilson & Leibowitz, a life insurance brokerage firm, to discuss policy and estate matters.

7. I subsequently had conversations with Mr. Wilson, Mr. Sutton and Mr. Ezra Sultan, another Gindi family representative and the CFO of Century 21, Inc., regarding the procurement of these new life insurance policies. During these discussions it was impressed on Mr. Wilson that pursuant to the 1993 Lollytogs Shareholder Agreement, the death benefit from the life insurance policy on Mr. Gindi would be used to fund a buyout of the Gindi family's 50% ownership share in Lollytogs. Being that Mr. Gindi was already 75 years old and would not, in all likelihood, ever be eligible for affordable insurance in the future, a policy with a conversion right was essential so as to insure that Lollytogs could fund the buyout and avoid violating any material terms of the 1993 Lollytogs Shareholders Agreement. Therefore, a conversion right in any life insurance policy to be procured was an essential requirement that I communicated to Mr. Wilson prior to him attempting to procure a life insurance policy on Mr. Gindi's life.

8. We were subsequently informed of proposals that were being offered by a number of carriers. The proposal from Travelers Insurance Company contained a five year conversion right; the proposal from North American Company for Life and Health provided a three year conversion right and the proposal from Midland Insurance Company provided a two year conversion right. The Lincoln proposal, however, contained conversion rights which could be exercised at any point throughout the first ten years of the policy's existence.

9. Mr. Wilson recommended that Lollytogs select the Lincoln proposal based upon the policies ten-year conversion rights trigger. This ten-year trigger allowed the policyholder to pay term insurance premiums for ten years before converting the policies and paying more expensive whole life premiums. Accordingly, it was explained that it was the most affordable policy overall.

10. Lollytogs followed this advice and consequently on or about October 1, 1999, Lincoln made and issued to Lollytogs' designated trustee, a life insurance policy bearing policy number 01T1133155 insuring the life of Samuel Gindi in the amount of $3,000,000.00. On or about November 8, 1999, Lincoln made and issued to Lollytogs designated trustee, a life insurance policy bearing policy number 01T1125550 insuring the life of Samuel Gindi in the amount of $26,000,000.00. (collectively referred to herein as the "Policies")

11. While the Policies were executed in 1999, full copies of the Policies were forwarded to Stephen Carb, Lollytogs' designated trustee, at Lollytogs business address at 100 West 33rd Street, New York, New York in January of 2000.

12. Shortly after receipt of the Policies, I reviewed them. In addition, I am aware that Samuel Gindi, Ezra Sultan and Richard Sutton also reviewed copies of the Policies at their respective offices in New York. At no time am I aware of the Policies being sent to Florida for review.

13. After review of the Policies an issue arose as to the language triggering the conversion rights under the Subject Policies. Specifically and notwithstanding our understanding that the Policies issued by Lincoln contained conversion rights, the Policies that we received suggested that the conversion of the Subject Policies had to

occur prior to Mr. Samuel Gindi reaching the age of seventy or prior to the expiration of the ten year level term premium period – whichever came first.  This became the subject of a conversation that was had with Mr. Sultan in 2000 given the fact that Samuel Gindi was 75 years old at the time the Policies were written.  Mr. Sutton subsequently requested that Mr. Gindi contact Lincoln and confirm the existence of conversion rights.

14. In July of 2000, in response to Mr. Wilson's request, he received a response to his inquiry regarding those conversion rights.  In a faxed letter from Lydia Trevino of the customer service department at Lincoln she represented that "[w]hen speaking to Stan Shelly, Vice President of our Customer Service Department.  [T]his policy will have conversion privileges up to the term of the policy."  This letter was subsequently provided to me.

15. Based upon this letter from Lincoln, I had now been re-assured that the Policies contained conversion rights which could be exercised at anytime during the ten year level premium period, notwithstanding the fact that Gindi was 75 years old when the Policies were issued.

16. If Lincoln had indicated at that time that the Policies did not provide conversion rights, I would have instructed Mr. Wilson to cancel the Lincoln Policies and replace them with other policies which contained conversion rights.

17. In September of 2003, I learned that in response to Mr. Wilson's request for illustrations reflecting the schedule of premiums associated with converting the Policies to whole life if the Policies were converted at that time; Lincoln informed us that it had made a mistake when it informed us that conversion rights were available during

the term of the Policies. I also learned that it had offered Lollytogs the option of converting the Policies in 2003.

18.     However, after consultation with Mr. Sultan and Mr. Sutton, and in the time frame provided by the proposed Policies Lincolns compromise offer was rejected given the differential in premium between the level term and the Whole Life premiums that would be paid between 2003 and 2009, I rejected the offer of a conversion right which had to be exercised in 2003.

Raymond Gindi

Sworn to me on this
16 day of Sept., 2011

Notary Public

ANTOINETTE MARIE COLOREO
Notary Public, State of New York
No. 01CO6194107
Qualified in Kings County
Commission Expires September 29, 2013

Docket No. 09 CV 2980

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

STEPHEN CARB AS TRUSTEE OF LOLLYTOGS, INC. TRUST

Plaintiff,

-against-

LINCOLN BENEFIT LIFE COMPANY, INC.,

Defendant.

AFFIDAVIT OF RAYMOND GINDI

*Weg and Myers, P.C.*
Attorney for Plaintiff

Office and Post office Address, Telephone
Federal plaza
52 Duane Street
NEW YORK, NEW YORK 10007
(212) 227-4210