

# SEYFARTH
**ATTORNEYS** SHAW LLP

820 Eighth Avenue
New York, New York 10018-1405
(212) 218-5500
fax (212) 218-5526
www.seyfarth.com

ANDREW L. CARTER, JR.
U.S. DISTRICT JUDGE
S.D.N.Y.

JUN 13 2012

Writer's direct phone
212-218-5504

Writer's e-mail
rrresnik@seyfarth.com

June 13, 2012

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 6-28-12

**BY EMAIL**

The Honorable Andrew L. Carter
United States District Judge
United States District Court
500 Pearl Street, Courtroom 725
New York, New York 10007
ALCarterNYSDChambers@nysd.uscourts.gov

Re:  G Investors Holding LLC as successors in interest to Stephen Carb as Trustee
of Lollytogs, Inc. Trust v. Lincoln Benefit Life Company Inc., 09-CV-2980 (ALC)

Dear Judge Carter:

This firm represents Lincoln Benefit Life Company Inc. ("LBL"), the defendant in
the above captioned action. On behalf of our client, we write in response to a letter dated today
from plaintiff's counsel Joshua Mallin, Esq. regarding the above captioned action. It appears that
Mr. Mallin seeks a conference before Your Honor, for some unspecified purpose, to address a
wholly separate declaratory judgment action LBL has filed in the United States District Court for
the District of Delaware regarding a recent demand by plaintiff herein, G Investors Holding, LLC
("G Investors"), to pay a death benefit in the sum of $29 million. The complaint in the Delaware
action, furnished to Your Honor by Mr. Mallin, clearly sets forth LBL's position and the reasons for
the declaratory relief sought. Accordingly, I will not burden the Court with an unnecessary
summary of the Delaware action.

Since the subject matter of Mr. Mallin's letter relates to a separate action in another
jurisdiction, in which LBL is represented by separate counsel, I am advised that the substance of
Mr. Mallin's letter and his request for a conference will be addressed in a separate communication
to Your Honor from P. Clarkson Collins, Esq. of the Morris James firm, LBL's Delaware counsel. I
do briefly note the following:

1.  Mr. Mallin's client, in its complaint before this Court in the action at bar, seeks no
relief with respect to any obligation which LBL may or may not have to pay the death benefit G
Investor has now claimed is due and owing. The only issue before this Court is whether G Investors
was entitled to convert two term life insurance policies, insuring the life of Sam Gindi, to universal
policies. Until this case is tried, it will not be determined which policy governs the parties'

LONDON  WASHINGTON, D.C.  SAN FRANCISCO  SACRAMENTO  NEW YORK  LOS ANGELES  HOUSTON  CHICAGO  BOSTON  ATLANTA



relationship and their respective obligations thereunder, including whether there are substantial additional premiums which G Investors is obligated to pay to LBL as an obvious pre-condition to payment of any death benefits;

2.    In this regard, Mr. Mallin concedes that the only premiums currently in escrow is the "minimum premium" amount due in the event plaintiff herein is successful at trial. The Court should be apprised that if LBL is successful at the trial at bar, there will be additional premiums due LBL from G Investors, a single purpose entity, in excess of $18 million. It is for this reason, among others, that LBL believes that a demand for payment of a $29 million dollar death benefit is premature and inappropriate; and

3.    Mr. Mallin does not dispute that the Delaware District Court has jurisdiction (G Investors is a Delaware entity) to determine the Delaware declaratory judgment action. If Mr. Mallin has a different view, he may seek relief before the Delaware District Court.

As noted above, Mr. Collins, counsel for LBL in the Delaware action, will respond further to Mr. Mallin's letter.

Thank you for Your Honor's attention.

Respectfully submitted,

SEYFARTH SHAW LLP

Richard M. Resnik

cc: Joshua Mallin, Esq. (by email)
P. Clarkson Collins, Jr. Esq. (by email)

A pre-motion conference is scheduled for 7/11/12 at 11:45 a.m.

SO ORDERED:

HON. ANDREW L. CARTER, JR.
UNITED STATES DISTRICT JUDGE   6-28-12

# Morris James LLP

P. Clarkson Collins, Jr.
302.888.6990
pcollins@morrisjames.com

June 13, 2012

**BY EMAIL**

The Honorable Andrew L. Carter
United States District Judge
United States District Court
500 Pearl Street, Courtroom 725
New York, New York 10007
ALCarterNYSDChambers@nysd.uscourts.gov



RECEIVED
JUN 13 2012
ANDREW L. CARTER, JR.
U.S. DISTRICT JUDGE
S.D.N.Y.

     Re:    G Investors Holding, LLC v. Lincoln Benefit Life Company Inc.
              09-CV-2980 (ALC)(KNF)

Dear Judge Carter:

     This firm represents Lincoln Benefit Life Company ("LBL") in an action recently filed in the United States District Court for the District of Delaware, captioned Lincoln Benefit Life Company Inc. v. G Investors Holding LLC, No. 12-CV-730 (the "Delaware Action"). I write in response to a letter, on which I was later copied, submitted to Your Honor this morning by Joshua Mallin, counsel for plaintiff in the above referenced action (the "SDNY" Action), concerning LBL's commencement of the Delaware Action. Mr. Mallin requests a conference before Your Honor in an apparent attempt to compel LBL to withdraw the Delaware Action. Although the letter to the Court was also sent to Richard Resnik, counsel for LBL in the SDNY Action, I submit this response as counsel for LBL with respect to the Delaware Action.

     We believe the Delaware Action is appropriately filed in Delaware, and LBL has no intention of withdrawing its declaratory judgment action. It is indisputable -- and Mr. Mallin does not deny -- that the Delaware court has both subject matter and personal jurisdiction over the Delaware Action because G Investors Holding, LLC ("G Investors") is a Delaware LLC and there is complete diversity. Further, the issues in the Delaware Action are different from the issues in the SDNY Action before Your Honor. The SDNY action concerns G Investors right to convert the term policies to policies with lower premiums; while the Delaware action concerns LBL's obligation to pay a death benefit before the governing policy has been determined and the premium has been paid to LBL. Indeed, in his letter, Mr. Mallin concedes that the death of the insured, Samuel Gindi ("Gindi"), does not affect the SDNY Action.

     Of equal importance, there is no relief sought in the SDNY Action with respect to the payment of the $29 million death benefit (the "Death Benefit") under the subject life insurance policies, nor could such relief be granted without an appropriate pleading. The pleading in the

Morris James LLP

June 13, 2012
Page 2

Delaware Action addresses precisely that issue. Moreover, the claim raised in the Delaware Action is not in the nature of a compulsory counterclaim that is required to be asserted in the SDNY Action. The so-called Death Benefit Claim was not mature at the time the SDNY action was filed in 2009, and did not come into existence until Gindi's death, years after commencement of the SDNY action.

LBL disputes that the recent claim for the Death Benefit under the subject life insurance policies is appropriate at this time. LBL should not be obligated to pay the Death Benefit to a single purpose vehicle of unknown assets when it is undisputed that if LBL is successful in the SDNY Action before Your Honor, LBL will be entitled to a judgment against G Investors for more than $18 million in unpaid premiums. We believe the demand for the Death Benefit is without merit, which is why the Delaware Action was commenced. Finally, we observe that while Mr. Mallin cavalierly threatens sanctions on some unspecified bases if he is forced to make some sort of unidentified motion presumably in the District Court in Delaware, we believe that any such threat is itself frivolous.

If Your Honor would like me to attend a conference, I will of course comply with such request. If Mr. Mallin believes the Delaware Action was improperly filed in Delaware, however, we believe any relief sought should be addressed in the Delaware Action. If Mr. Mallin is truly desirous of conserving judicial resources, all his client need do is withdraw its demand for payment of Death Benefit until the action before Your Honor is tried, the rights and obligations of the parties are properly fixed and determined and the appropriate premium amount has been received by LBL.

Thank you for Your Honor's consideration of this matter.

Respectfully submitted,

P. Clarkson Collins, Jr.
(Bar ID No. 739)

cc:   Joshua Mallin, Esquire (by email)
      Richard M. Resnik, Esquire (by email)

# SEYFARTH
**ATTORNEYS SHAW LLP**

620 Eighth Avenue
New York, New York 10018
(212) 218-5500
fax (212) 218-5526
www.seyfarth.com

Writer's direct phone
(212) 218-5504

Writer's e-mail
rresnik@seyfarth.com

June 14, 2012



**BY EMAIL**

The Honorable Andrew L. Carter
United States District Judge
United States District Court
500 Pearl Street, Courtroom 725
New York, New York 10007

Re:   G. Investors Holding LLC as successors in interest to Stephen Carb as Trustee of
      Lollytogs, Inc. Trust v. Lincoln Benefit Life Company Inc., 09-CV-2980 (ALC)

Dear Judge Carter:

On behalf of LBL, I again write in response to a letter from Mr. Mallin to the Court today.
My letter to Your Honor of yesterday, as well as Mr. Collins' letter, made clear that we will attend
any conference the Court schedules. Mr. Collins and I are both available on Tuesday, June 19 and
Wednesday, June 20. I begin a ten day vacation on June 21 and am available when I return on July
2.

I am advised that Mr. Collins will be further responding to Mr. Mallin's letter separately and
that such response will be sent to the Court before the close of business tomorrow.

I respond briefly to two points raised in Mr. Mallin's letter of today. First, if plaintiff's
counsel in this action intends to seek to amend the complaint at bar as stated, on behalf of our client,
we will respond to such attempt to amend the pleading as we believe appropriate after those motion
papers and the proposed pleading have been served on us. No further response is necessary on this
point.

Second, plaintiff's demand, as set forth in Mr. Mallin's letter of today, that LBL be required
to pay a $29 million death benefit to a single purpose entity and return a portion of this policy year's
premiums before there is any determination of the parties' rights and obligations at bar -- including
whether G Investors has the financial wherewithal or will pay approximately $18 million in
premiums (less any unearned premium credit) if it is unsuccessful at trial, suggests precisely what
plaintiff's strategy and intentions are with respect to the action at bar.

THIS LETTERHEAD IS PRINTED ON RECYCLED STOCK ♻



The Honorable Andrew L. Carter
June 14, 2012
Page 2

Thank you for Your Honor's continuing attention.

Respectfully yours,

SEYFARTH SHAW LLP

Richard M. Resnik

cc: Joshua Mallin, Esq. (by email)
    P. Clarkson Collins, Jr. Esq. (by email)

*Weg and Myers, P.C.*

**ATTORNEYS AT LAW**
**FEDERAL PLAZA**
**52 DUANE STREET, NEW YORK, NEW YORK** 10007
(212) 227-4210
FAX: 212-349-6702
WWW.WEGANDMYERS.COM

RECEIVED
JUN 13 2012
ANDREW L. CARTER, JR.
U.S. DISTRICT JUDGE
S.D.N.Y.

CONNECTICUT AFFILIATE
LAW OFFICE OF
**BRIAN D. ROSENFELD**
16 RIVER STREET
NORWALK CT 06850
(203) 853-3666

NEW JERSEY AFFILIATE
LAW OFFICE OF
**MASELLI-WARREN, P.C.**
600 ALEXANDER ROAD
PRINCETON, NJ 08540
(609) 452-8411

June 13, 2012

**VIA E-MAIL**
The Honorable Andrew L. Carter, USDJ
United States District Court, Southern District of New York
500 Pearl Street, Courtroom 14A
New York, NY 10007

> Re:  G Investors Holding, LLC. as successors in interest to Stephen Carb as
> Trustee of Lollytogs, Inc. Trust v. Lincoln Benefit Life Company Inc.,
> 09-CV-2980 (ALC)
> Our File No: 09-103

Dear Judge Carter:

  This firm represents Plaintiff in the above-referenced matter.  I respectfully submit this letter to request a conference in the above-referenced action.

  As the Court is aware, this life insurance policy conversion/premium litigation matter is scheduled for trial on October 29, 2012. On May 20, 2012 Mr. Samuel Gindi, the individual upon whose life the subject life insurance policies were taken, passed away. Pursuant to the terms and conditions of the Policies, LBL was given notice of this event. This event however does nothing to materially affect the above-referenced litigation other than to narrow the issues as to the maximum amount of premium Plaintiff would owe defendant Lincoln Benefit Life Company, Inc. ("LBL") under LBL's theory of the case. Moreover, the minimum premium owed, based upon the Plaintiff's theory of the case, is currently being held in escrow.

  Notwithstanding same, not only has LBL decided not to pay the beneficiaries of the Subject Life Insurance Policies the undisputed benefit amount owed, net of LBL's claim as to the amount of premiums owed to it under the Policies, but this firm was informed on June 11, 2012 that LBL has commenced a declaratory judgment action in the United States District Court for the District of Delaware entitled *Lincoln Benefit Life Company, Inc. v. G Investors Holding LLC*, (the "Delaware Action"), an action wholly related to the instant action. In fact, the sole relief sought in the Delaware Action is a "judicial declaration with respect to the rights and obligations of the parties under the Policies pending the determination and conclusion of the Underlying Action" (which is defined as the instant action before this Court in its pleading). A copy of the Delaware Action complaint is annexed hereto.

*Weg and Myers, P. C.*

Honorable Andrew L. Carter
June 13, 2012
Page 2

It is axiomatic that this Court has the power to effectuate remedies and judgments so as to provide relief to the parties, notwithstanding the fact that the parties have not sought such relief. *See F.R.C.P. 54(c).* Accordingly, it must be presumed that LBL's decision to file its "Declaratory Judgment" action in Delaware is a blatant exercise in both forum shopping and an excuse to delay payment of the undisputed amount of net benefits until the conclusion of the instant action. As a result, before Plaintiff is compelled to engage in motion practice in which it will seek (a) to compel LBL to pay the undisputed amount of death benefits owed under the Policies, (b) dismissal of the Delaware Action as well as (c) sanctions resulting from the frivolous filing of the Delaware Action , it is requesting a conference in an attempt to avoid the waste of judicial resources as well as the resources of the parties.

We thank the Court in advance for its attention to this matter.

Respectfully submitted,
WEG AND MYERS, P.C.

By Joshua L. Mallin (JLM 0474)

Cc:   **Via E-Mail (rresnic@seyfarth.com) (w/encl.)**
      Seyfarth Shaw, LLP
      *Attorneys for Defendant*
      Attn:  Richard Resnik Esq.

UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
LINCOLN BENEFIT LIFE COMPANY INC.,          :
                                            :  Case No.
                    Plaintiff,              .
            vs.                             .
                                            .
G INVESTORS HOLDING LLC,                    .
                                            .
                    Defendant.              .
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### COMPLAINT FOR DECLARATORY RELIEF

Plaintiff Lincoln Benefit Life Company Inc. ("Plaintiff" or "Lincoln"), by its undersigned

counsel, complaining of defendant G Investors Holding LLC ("Defendant" or "G Investors"),

alleges as follows:

### INTRODUCTION

1.      This is an action for Declaratory Judgment, pursuant to 28 U.S.C. § 2201, seeking

a judicial determination regarding the parties' rights and obligations pursuant to two term life

insurance policies (the "Policies") issued to Defendant's predecessor and insuring the life of

Samuel Gindi ("Gindi"), who passed away on May 20, 2012.

2.      Shortly after Gindi's death, Defendant initiated demand for payment of the death

benefit under the Policies in the amount of $29 million (the "Death Benefit"). That demand is

both premature and inappropriate and, accordingly, an actual controversy exists between the

parties with respect to their respective rights and obligations under the Policies.

3.      By this action, Lincoln seeks a judicial declaration that any contractual obligation

that Lincoln may have to pay a death benefit to Defendant does not arise until the determination

and conclusion of an action currently pending in the United States District Court for the Southern

District of New York, captioned G Investors Holding LLC as successors in interest to Stephen

Carb as Trustee of Lollytoys, Inc. Trust v. Lincoln Benefit Life Company Inc., No. 09-CV-2980 (ALC) (KNF) (the "Underlying Action").

4.      In the Underlying Action, commenced by Defendant's predecessor, it is alleged that Lincoln breached the Policies by refusing to permit Defendant to convert the Policies to universal life policies where the premiums that would be required to be paid would be substantially less than for the existing term Policies. The Underlying Action is scheduled for trial on October 29, 2012.

5.      Pursuant to an Order dated September 11, 2009 (annexed as Exhibit A) (the "Order"), discussed below, in order to maintain the status quo and prevent termination of the Policies while the parties litigated Defendant's claim in the Underlying Action, Defendant was directed to deposit in escrow a sum equal to the premiums Defendant would be required to pay if ultimately successful in the Underlying Action, and further directing that if Lincoln was successful in the Underlying Action, the substantial difference between the escrowed sums and the premiums due for the term coverage under the Policies would be paid to Lincoln within (60) days of any judgment in favor of Lincoln in the Underlying Action. Annexed as Exhibit A is a copy of the Order.

6.      Pursuant to the Order, there is currently in escrow the sum of $8,758,325 (the "Escrow Amount"). If Lincoln is successful at trial in the Underlying Action, Defendant herein will be obligated to pay Lincoln additional premiums in the sum of $18,559,165.[1]

7.      Until such time as the Underlying Action is determined, it is unknown whether the parties' rights and obligations are governed by the existing term Policies or the universal

---

[1] For clarity and simplicity, Lincoln omits any discussion regarding a return of a portion of the unearned premiums for policy year 13 (October/November 2011 to October/November 2012) reflecting Gindi's death during the policy year.

2

policies to which Defendant claims it has the right to convert and whether substantial additional

premiums must be paid to Lincoln as earned premiums under the existing term Policies.

## JURISDICTION AND VENUE

8.     This Court has jurisdiction of this action pursuant to 28 U.S.C. §1332 based upon

diversity of citizenship of all parties and the amount in controversy, exclusive of interest and

costs, exceeding the sum of seventy-five thousand dollars ($75,000).

9.     Venue is proper pursuant to 28 U.S.C. § 1391, in that Defendant resides in this

district.

10.    This action is currently ripe for adjudication because an actual controversy of a

justiciable nature exists between Lincoln and Defendant within the meaning of 28 U.S.C. § 2201.

## PARTIES

11.    Lincoln is a corporation organized and existing under the laws of the State of

Nebraska with its principal place of business in Lincoln, Nebraska.

12.    Upon information and belief, Defendant is a single purpose entity organized and

existing under the laws of the State of Delaware.

## FACTUAL BACKGROUND

**I.     The Policies**

13.    In October and November 1999, Lincoln issued the two subject (2) twenty-year

term life insurance Policies insuring the life of Gindi: one for $3,000,000 (the "3MM Policy")

and the other for $26,000,000 (the "26MM Policy"), respectively.

14.    Other than the death benefit amount and premium payments, the Policies are

identical.

15.    At the time the Policies were issued, Gindi was 75 years old.

3

16.    Each Policy provides for guaranteed periods of level premium for the first ten years in the aggregate sum of $512,550 per year for both Policies.

17.    Defendant paid $5,125,500 in aggregate premiums commencing October/November 1999 for the ten year level premium period.

18.    The level premium period for the 3MM Policy expired on October 1, 2009 and November 8, 2009 for the 26MM Policy.

19.    Thereafter, pursuant to the terms of the Policies, the aggregate premiums increased from $512,550 to $8,486,680 for policy year 11 (2009-2010), when Gindi turned 85, and increased substantially for each subsequent year through policy year 20 when Gindi would have reached 95.

20.    Each Policy contains the following provision:

Conversion Right

*conversion of this policy*

> Prior to the earlier of the policy anniversary next following the insured's seventieth birthday or the end of the level premium period, you may convert this policy to another policy [whole life or flexible premium] insuring the life of the insured.

## II.   The Underlying Action

21.    On or about March 25, 2009, on the eve of expiration of the Policies' ten year level premium periods, when the aggregate premiums were to jump from $512,550 to $8,486,680 for policy year 11 (2009-2010) (and higher thereafter), Defendant's predecessor, Stephen Carb ("Carb"), the trustee of the original beneficiary Lollytogs, Inc. Trust,[2] commenced

---

[2] During the pendency of the Underlying Action, Lincoln consented to the change of the beneficiary of the Policies from Carb to G Investors and the parties agreed to change the caption of the Underlying Action to reflect the change of the plaintiff in the Underlying Action from Carb to G Investors. By So Ordered Stipulation dated August 15, 2011, the transfer of the beneficiary from Carb to G Investors was not intended to change, alter or modify any of the claims or defenses in the Underlying Action and/or the issues to be determined.

4

the Underlying Action in this Court, asserting claims for breach of contract, reformation and declaratory judgment. After various motion practice, only the breach of contract claim remains.

22.     In the Underlying Action, Defendant contends that it has the right to convert the Policies to whole or universal life policies, effective October 1, 2009 and November 8, 2009, thereby entitling Defendant to pay substantially lower premiums than what Defendant would be required to pay under the existing term Policies.

23.     Lincoln, on the other hand, maintains that Gindi had no right to convert the Policies because: (i) he was already seventy-five years old at the time the Policies were issued, and the limited "Conversion Right" to convert the Policies to whole life policies can only be exercised "prior to the earlier of the policy anniversary next following the insured's seventieth birthday or the end of the level premium period"; and (ii) in any event, Defendant later accepted and rescinded Lincoln's offer of a one time conversion privilege with the full knowledge and understanding that it would have no further rights of conversion.

24.     The trial of the Underlying Action is scheduled for October 29, 2012 before Judge Andrew L. Carter.

**III.    Judge Berman's September 11, 2009 Order**

25.     Shortly after the commencement of the Underlying Action, and shortly before the expiration of the level premium periods under the Policies, Defendant requested a pre-motion conference before Judge Berman, to whom the Underlying Action was then assigned.

26.     The request was prompted by Defendant's concern that: (i) it not be required to pay the substantially higher premiums that were shortly due under the term Policies while it litigated the Underlying Action and Defendant's alleged right to convert the term Policies to

universal life policies; and (ii) the existing Policies not lapse for failure to pay the necessary premiums.

27.     Under the existing term Policies, Defendant was obligated to pay Lincoln premiums in the aggregate sum of $8,486,680 in October/November 2009 to prevent the existing term Policies from lapsing and to maintain policy year 11 (2009-2010).

28.     Accordingly, the request for the pre-motion conference announced Defendant's intention to seek a "preliminary injunction for the purpose of maintaining [Defendant's] right [to convert from term insurance to universal life both of the policies identified in the Underlying Action] by paying into escrow only the lesser amount due for a whole life or flexible premium adjustable plan with an agreement to pay [Lincoln] additional premiums equal to the amount due for a term policy if the Court finds [Defendant] is only entitled to a term policy."

29.     Judge Berman chose not to proceed with motion practice.  Rather, after requesting proposed orders from both sides, Judge Berman entered the Order on September 11, 2009 requiring Defendant, without prejudice to either party's positions in the Underlying Action, to deposit into an escrow account "premiums in an amount required for a convertible [universal life] policy" and further directing that "upon a final determination by this Court as to the merits of [the Underlying Action], [Defendant] shall have sixty (60) days to make payment to [Lincoln] of the difference, if any, between premiums determined to be applicable and the premiums paid into escrow pursuant to this Order."

30.     Since the entry of the Order, Defendant has deposited the following sums into escrow:

| Policy Year Beginning | Premiums Due Under Universal Policies |
|---|---|
| October/November 2009 (policy year 11) | $2,971,242 |
| October/November 2010 (policy year 12) | $2,971,242 |
| October/November 2011 (policy year 13) | $2,815,841 |

31.   There is currently in escrow the aggregate sum of $8,758,325 pursuant to the Order.

32.   Pursuant to the premium schedule in the existing term Policies, Defendant is required to pay the following premiums for continuing term coverage:

| Policy Year Beginning | Premiums Due Under Term Policies |
|---|---|
| October/November 2009 | $8,486,680 |
| October/November 2010 | $9,066,390 |
| October/November 2011 | $9,764,420 |

33.   Thus, if it is determined in the Underlying Action that Defendant does not have the right of conversion and that Defendant must therefore pay the higher applicable premiums under the Policies, which premiums are now earned, Defendant will be obligated to pay an additional $18,559,165 to Lincoln, as well as release the sum of $8,758,352 currently being held in escrow.

34.   Until there is a determination in the Underlying Action with respect to Defendant's right to convert the term Policies, the only policies applicable to any claim are the term Policies.

**IV.   Gindi's Death and Defendant's Demand for the Death Benefit**

35.   On or about May 20, 2012, Gindi died.

7

36.     Shortly thereafter, notwithstanding the Underlying Action, a representative of
Defendant's insurance broker contacted Lincoln both telephonically and in writing and
demanded that Lincoln process the Death Benefit claim in the sum of $29 million.

37.     By letter dated June 11, 2012, counsel for Lincoln advised counsel for Defendant
that any demand for payment of death benefits was both premature and inappropriate for the
reasons set forth herein.

**COUNT I**
**(Declaratory Judgment)**

38.     Lincoln hereby repeats and realleges and incorporates by reference the allegations
contained in paragraphs 1 through 37 as if fully set forth herein.

39.     There exists an actual, immediate and justiciable controversy between the parties
with respect to whether Lincoln is obligated to pay the Death Benefit to Defendant prior to the
resolution of the Underlying Action and before receiving the payment of additional premiums in
the sum of $18,559,165, if Plaintiff herein is successful in the Underlying Action.

40.     The Underlying Action will adjudicate the parties' rights and obligations with
respect to the applicable policies, including Defendant's alleged right of conversion and whether
Defendant is obligated to pay the substantial premiums that are owed under the Policies.

41.     Therefore, Lincoln's obligation to pay the Death Benefit does not arise until such
time as the Underlying Action has been concluded.

42.     Based on all of the foregoing, Lincoln seeks a judicial declaration that until there
is a determination in the Underlying Action as to whether: (i) Defendant has any right to convert
the Policies from term to universal life; (ii) there are additional premiums due to Lincoln as set
forth herein; and (iii) those additional premiums, if any, are paid in full to Lincoln, there is no

8

current obligation on the part of Lincoln to make any payment of the Death Benefit under the Policies.

43.    Declaratory relief sought herein will resolve the controversy between the parties.

44.    Lincoln has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Lincoln respectfully requests an Order:

1.    For a judicial declaration with respect to the rights and obligations of the parties under the Policies pending the determination and conclusion of the Underlying Action; and

2.    Awarding Lincoln such other and further relief as this Court may deem just and equitable.

Dated:   June 11, 2012

MORRIS JAMES LLP

By: _____
P. Clarkson Collins Jr., Esq. (#739)
500 Delaware Avenue, Suite 1500
Wilmington, Delaware 19801
(302) 888-6800
pcollins@morrisjames.com

Attorneys for Plaintiff Lincoln Benefit Life
  Company Inc.

9

# EXHIBIT   A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
STEPHEN CARB AS TRUSTEE
OF LOLLYTOGS, INC. TRUST,

                          Plaintiff,

            - against -

LINCOLN BENEFIT LIFE COMPANY INC.,

                          Defendant.
----------------- -----------------------------------------x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9|11|09

09 Civ. 2980 (RMB)

**ORDER**

        Based on the record herein, including Plaintiff's letters dated September 10 and 11, 2009,

Defendant's letter dated September 10, 2009, and the proposed orders submitted by each party,[1]

it is hereby

        **ORDERED**, without prejudice as to either party's position regarding Defendant's

pending Motion to Dismiss, dated June 23, 2009, or the ultimate merits of this matter, that

Plaintiff is to pay into an escrow account (the exact terms of which are to be worked out

forthwith by the parties) "premiums in an amount required for a convertible policy," pending the

resolution of this matter, see Letter from Joshua L. Mallin, Esq. to Hon. Richard M. Berman,

dated Sept 11, 2009; and

        **IT IS FURTHER ORDERED THAT** such premiums as relate to the policy issued

October 1, 1999, shall be paid into escrow on or before October 1, 2009, and that such premiums

as relate to the policy issued November 8, 1999, shall be paid into escrow on or before

November 8, 2009; and

_____

        As far as this Court is aware, the only pending motion is Defendant's Motion to Dismiss
[#10] filed June 23, 2009.

Case 1:09-cv-02980-ALC-KNF   Document 96   Filed 06/28/12   Page 20 of 23

Case 1:09-mc-09999   Document 469-1   Filed 06/11/12   Page 3 of 3 PageID #: 29744
Case 1:09-cv-02980-ALC-KNF   Document 19   Filed 09/11/09   Page 2 of 2

IT IS FURTHER ORDERED THAT, upon a final determination by this Court as to the merits of this case, Plaintiff shall have sixty (60) days to make payment to Defendant of the difference, if any, between the premiums determined to be applicable and the premiums paid into escrow pursuant to this Order; and

IT IS FURTHER ORDERED THAT the parties are directed to work in good faith to negotiate an amicable resolution of this matter; and

IT IS FURTHER ORDERED THAT that the parties are directed to appear before the Court for a status and settlement conference, with their principals, on November 9, 2009 at 9:00 a.m. in Courtroom 21B of the Daniel Patrick Moynihan Courthouse, 500 Pearl Street, New York, New York

SO ORDERED.

Dated: New York, New York
        September 11, 2009

RICHARD M. BERMAN, U.S.D.J.

2



RECEIVED

JUN 15 2012

ANDREW L. CARTER, JR.
U.S. DISTRICT JUDGE
S.D.N.Y.

# MorrisJames LLP

P. Clarkson Collins, Jr.
302.888.6990
pcollins@morrisjames.com

June 15, 2012

**BY EMAIL**
The Honorable Andrew L. Carter
United States District Judge
United States District Court
500 Pearl Street, Courtroom 725
New York, New York 10007

   Re: G Investors Holding, LLC v. Lincoln Benefit Life Company Inc.
     09-CV-2980 (ALC)(KNF)

Dear Judge Carter:

   On behalf of Lincoln Benefit Life Company Inc. ("Lincoln"), the plaintiff in the Delaware action, I write to address Mr. Mallin's letter of June 14, 2012. Mr. Mallin argues this Court should rely on the first-filed rule to enjoin Lincoln, as defendant in the captioned matter, from proceeding with its Delaware action. As discussed below, no basis exists for granting G Investors injunctive relief. The first-filed rule does not apply because the Delaware action: (i) involves a different claim that arose years after the claim in the captioned matter; (ii) does not involve a compulsory counterclaim and (iii) will not be resolved under the current pleadings.

   Under the Second Circuit's first-filed rule, "a district court 'may enjoin a suitor in [a] more recently commenced case from taking any further action in the prosecution of that case' if the claims presented in the second action should have been interposed as compulsory counterclaims in the suit pending before it." *Computer Assocs. Int'l, Inc. v. Altai, Inc.,* 893 F.2d 26, 28-29 (2d Cir. 1990) (citation omitted). If, however, the claims in the later action would not be considered compulsory counterclaims to the claims in the earlier action, an injunction against further prosecution of the later action would be inappropriate under the first-filed rule. *Id.* at 29.

   In the *Computer Associates* case, the plaintiff Computer Associates filed an action against Altai, Inc., alleging copyright infringement, trade secret misappropriation and unfair competition by Altai. *Id.* at 28. This action was pending in the Eastern District of New York when four months after the Computer Associates filing, Altai commenced suit in the Northern District of Texas claiming tortious interference, libel, slander and various antitrust violations against Computer Associates. *Id.* Altai alleged that the tortious interference, libel and slander related not only to Computer Associates' initiation of the New York action, but also to later misrepresentations made by Computer Associates following the filing of suit. *Id.* The New York District Court denied the application to enjoin Altai from proceeding in Texas. 893 F.2d at 28. On appeal, Computer Associates argued Altai's claims should have been interposed as compulsory counterclaims in the New York action and Altai should have been enjoined from

Morris James LLP

The Honorable Andrew L. Carter
June 15, 2012
Page 2

prosecuting the Texas action. *Id.* The Second Circuit affirmed. *Id.* at 30. It held that conduct
occurring after the initiation of the New York action and included in the Texas claims is not a
compulsory counterclaim and that it would have been inappropriate to enjoin prosecution of the
Texas action under the first-filed rule.[1] *Id.* at 29.

Similarly, in the case at bar, G Investors' claim concerns its right to convert the life
insurance policies on Mr. Gindi from term to universal life policies and the respective premiums
that would be owed to Lincoln. The nucleus of operative fact concerns events that occurred
between 1999 and 2009. In contrast, the facts underlying the Delaware action concern events
arising from Mr. Gindi's death in May 2012 and subsequent actions by G Investors to collect the
death benefit on the policies before the underlying policy type and premiums have been
determined and before Lincoln has received payment of the appropriate premium. Moreover, the
New York case currently prepared for trial in October does not resolve the issue raised by the
Delaware action and by G Investors' own admission will not be affected by the Delaware action.

Rule 13(a)(1) of the Federal Rules of Civil Procedure provides that for counterclaims to
be compulsory, they must be claims that are mature at the time of the defendant's response to the
complaint and arise out of the same transaction or occurrence.[2] *Tommy Hilfiger Licensing Inc. v.
Bradlees Inc.*, 2001 WL 1702151 at *5 (S.D.N.Y. Jan. 11, 2002); *Reino de Espana v. American
Bureau of Shipping*, 328 F.Supp. 2d 489, 493 (S.D.N.Y. 2004); 3 *James Wm. Moore et al.,
Moore's Federal Practice*, §13.13 (3d ed 2007.) Because Lincoln's claims in the Delaware
action arose years after commencement of the New York action, they are not compulsory
counterclaims. The Delaware action therefore is not duplicative.

The cases relied upon by G Investors are distinguishable and do not involve later
occurring events. In *Toy Biz Inc. v. Centuri Corporation*, 990 F.Supp. 328 (S.D.N.Y. 1998), the
second Colorado case involved the same witnesses and parties and arose out of the
manufacturing and distribution of Centuri's Goldstrike model rockets and Toy Biz's Quest
Aerospace model rockets. The two causes of action brought by Centuri in the Colorado action
filed three weeks later were asserted by Centuri in the earlier New York action as affirmative
defenses and counterclaims. Although the Court does not identify whether the claims were
compulsory, they were matured claims arising out of the same occurrence or transaction, unlike
the case at bar.

The other case cited by G Investors, *First City National Bank and Trust Company v.
Simmons*, 878 F.2d 76 (2d Cir. 1989), did not even involve an injunction. In that case, the

---

[1] *See also*, *Smith v. Securities and Exchange Commission*, 129 F.3d 356, 361 (6th Cir. 1997) ("A
court abuses its discretion when it enjoins a party from proceeding in another suit that is not truly
duplicative of it.")
[2] F.R.C.P.13(a)(1) states: "A pleading must state as a counterclaim any claim that -- at the time
of its service -- the pleader has against an opposing party...."

Morris James LLP

The Honorable Andrew L. Carter
June 15, 2012
Page 3

second filed New York actions were two suits by the bank brought against the makers of promissory notes to collect the unpaid balance. They were filed several weeks after the makers of the notes had filed suit in Oklahoma seeking rescission of the same promissory notes. On appeal the Second Circuit upheld the district court's dismissal of the two New York suits in favor of the Oklahoma cases, ruling that the district court's application of the first-filed rule to avoid duplicative litigations was properly applied. Thus, motion practice actually was permitted to proceed in the second action to determine whether it should go forward. Likewise, any objections G Investors has to proceeding in the Delaware action should be raised there.

Finally, Mr. Mallin suggests that the Court may dispose of the death benefit claim merely by exercising its authority under Rule 54(c) to fashion relief in the pending New York action. This action, however, does not yet include the substantive issues already raised in the Delaware action. Those include plaintiff's right to receive a death benefit before Lincoln has been paid the appropriate premiums.

The recently announced intention of G Investors to seek to amend or supplement its New York pleading demonstrates plaintiff's understanding that the claims raised in the Delaware action are substantive in nature and not presently encompassed by the New York pleadings. G Investors is simply wrong if it is suggesting that the Delaware action does not actually raise a new claim and simply may be dealt with under the procedural remedy provisions of Rule 54. Plaintiff's attempt to ignore the important substantive rights involved in the Delaware action should be seen for what it is: an effort by a special purpose entity of unknown assets to obtain a death benefit before payment of the required premiums.

As I previously noted, I stand ready at the Court's request to attend a pre-motion conference to address these issues.

Respectfully submitted,

P. Clarkson Collins, Jr.
(Bar ID No. 739)

cc:    Joshua Mallin, Esquire (by email)
       Richard M. Resnik, Esquire (by email)