09-103.02

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

G INVESTORS HOLDING LLC as )
successors in interest to STEPHEN CARB )
AS TRUSTEE OF LOLLYTOGS, INC. TRUST, )      09 CIV 2980 ALC KNF
                )
            Plaintiff, )
                )
       -against- )
                )
                )
LINCOLN BENEFIT LIFE COMPANY, INC. )
                )
                )
          Defendant. )
                )

## PLAINTIFFS' STATEMENT OF MATERIAL FACTS
## ON MOTION FOR PARTIAL SUMMARY JUDGMENT
## AS TO WHICH THERE ARE NO GENUINE ISSUES TO BE TRIED

Pursuant to Local Civil Rule 56.1 of the United States District Court of the Southern

District of New York, Plaintiff G INVESTORS HOLDING, LLC as successors in interest to

STEPHEN CARB AS TRUSTEE OF LOLLYTOGS, INC. TRUST, (hereinafter "Plaintiff")

hereby submit its Statement of Material Facts in connection with Plaintiff's Motion for, *inter*

*alia*, Partial Summary Judgment as to which there are no genuine issues to be tried:

       1.       On or about October 1, 1999, Stephen Carb as trustee of the Lollytogs, Inc. Trust

purchased from Defendant LINCOLN BENEFIT LIFE COMPANY, INC. (hereinafter

"Defendant"), for good and valuable consideration, a term life policy, bearing policy no.

01T1125550, which insured the life of Samuel Gindi (hereinafter "Gindi") in the amount of

$3,000,000.00 (hereinafter the "$3 million policy"). *Annexed to the Declaration of Derek M.*

*Zisser ("Zisser Dec.") as "Exhibit A".*

       2.       On or about November 8, 1999, Stephen Carb as trustee of the Lollytogs, Inc.

Trust purchased from Defendant LINCOLN BENEFIT LIFE COMPANY, INC. (hereinafter

"Defendant"), for good and valuable consideration, a term life policy, bearing policy no.

01T1133155, which insured the life of Samuel Gindi (hereinafter "Gindi") in the amount of $26,000,000.00 (hereinafter the "$26 million policy"). *Zisser Dec., "Exhibit B"*.

3.      Both the $3 million and the $26 million policies offered a ten year level premium term with the option to convert the policy upon expiration of the level premium term at a favorable premium level. *Zisser Dec., "Exhibit A"; "Exhibit B"*.

4.      When both the $3 million and the $26 million policies were issued, it was known to Defendant that Gindi was 75 years old. *Zisser Dec., "Exhibit A" at p. 3, p.11; Zisser Dec., "Exhibit B" at p.3, p.11*.

5.      Despite the fact that the application submitted with the insured's application correctly identified Gindi's age at the time the policies were issued, the policies set forth a conversion date to be exercised "prior to the earlier of the policy anniversary next following the insured's seventieth birthday or the end of the level premium period. *Zisser Dec., "Exhibit A" at p. 8; Zisser Dec., "Exhibit B" at 8*.

6.      On or about July 13, 2000, Defendant confirmed that the $3 million and the $26 million policies had conversion rights. *Zisser Dec., "Exhibit D"*.

7.      On or about February 26, 2003, Defendant informed Plaintiff that there were no conversion rights under the $3 million and the $26 million policies. *Zisser Dec., "Exhibit E"*.

8.      On or about May 29, 2007, as the expiration of the level premium term approached, Plaintiff attempted to convert the $3 million and the $26 million policies. *Zisser Dec., "Exhibit F"*.

9.      On or about November 8, 2007, Defendant informed Plaintiff that the $3 million and the $26 million policies were not convertible due to the insured's age, despite its previous July 13, 2000 confirmation letter and the terms of the policies. *Zisser Dec., "Exhibit G"*.

2

10.     Because Defendant refused to allow Plaintiff to convert the policies, plaintiff commenced the instant action on March 26, 2009 (the "New York action"). *Zisser Dec. "Exhibit H"*.

11.     An amended complaint in the New York Action was filed on April 28, 2009. *Zisser Dec. "Exhibit I"*.

12.     The central issues in the New York action revolve around whether or not Plaintiff was entitled to convert the term policies into whole life policies on October 1, 2009 and November 8, 2009, pursuant to the terms of the $3 million and the $26 million policies, and the corresponding premiums to be paid under said policies. *Id.*

13.     The minimum premium accrued to date, in connection with the cumulative amount owed on the $3 million and the $26 million policies, is $8,758,325.00. *Zisser Dec. "Exhibit A" and "Exhibit B"*.

14.     $8,758,325.00 is currently being held in escrow pursuant to Judge Berman's Orders dated September 11, 2009 and December 15, 2010. *Zisser Dec., "Exhibit J"; "Exhibit K"; and "Exhibit L"*.

15.     The trial of the New York action is scheduled to commence on October 29, 2012.

16.     On May 20, 2012 Gindi passed away. *Zisser Dec., "Exhibit P"*.

17.     Defendant was timely notified of Gindi's death and was provided a death certificate as required by the $3 million and the $26 million policies. *Zisser Dec., "Exhibit Q"*.

18.     On or about June 11, 2012, Defendant filed an additional action in the United States District Court for the District of Delaware entitled *Lincoln Benefit Life Company, Inc. v. G Investors Holding LLC*, Civil Action No. 12-730 (the "Delaware Action"). *Zisser Dec., "Exhibit R"*.

19.     The Delaware Action concerns the same policies and events as the New York Action. *Zisser Dec., "Exhibit R"*.

20.     The sole relief sought in the Delaware Action is a "judicial declaration with respect to the rights and obligations of the parties under the Policies pending the determination and conclusion of the Underlying Action[1]". *Zisser Dec., "Exhibit R" at p. 9.*

21.     Plaintiff has complied with all conditions precedent under both the $3 million and the $26 million policies. *Zisser Dec. "Exhibit A" and "Exhibit B".*

22.     Defendant has failed to pay the death benefit due under the $3 million and the $26 million policies. *Zisser Dec. "Exhibit A"; "Exhibit B"; "Exhibit H"; "Exhibit I"; and Exhibit Q".*

23.     The maximum premium which Plaintiff could have to pay Defendant is $27,317,490.00. *Zisser Dec. "Exhibit A" and "Exhibit B".*

24.     The death benefits of both the $3 million and the $26 million policies totals $29,000,000.00. *Zisser Dec. "Exhibit A" and "Exhibit B".*

25.     Plaintiff has an absolute and immediate right to receive $1,682,510.00 from Defendant, which represents the difference between the $29,000,000.00 death benefit and the

---

[1] The Complaint in the Delaware action defines the "Underlying Action" as the instant action. *Zisser Dec., "Exhibit R" at ¶3.*

4

$27,317,490.00 maximum premium that Defendant could receive. *Zisser Dec. "Exhibit A" and*

*"Exhibit B".*

Dated: July 20, 2012

WEG AND MYERS, P.C.
*Attorneys for Plaintiff*

By:_____
Dennis T. D'Antonio (DD 0973)
Joshua L. Mallin (JM 0474)
Derek M. Zisser (DZ 1984)
Federal Plaza
52 Duane Street, 2nd Floor
New York, New York 10007
(212) 227-4210

To:    Seyfarth Shaw, LLP
       620 Eighth Avenue
       New York, New York 10018

       Attn:   Richard Resnik, Esq.

       Morris James, LLP
       P.O. Box 2306
       Wilmington, DE 19899-2306

       Attn:   P. Clarkson Collins, Esq.

5

Docket No 09-CV 2980 ALC KNF

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

G  INVESTORS HOLDING LLC as successors in interest to
STEPHEN CARB AS TRUSTEE OF LOLLYTOGS,
INC. TRUST

                                        Plaintiff,

          -against-

LINCOLN BENEFIT LIFE COMPANY, INC.,

                                        Defendant.

PLAINTIFF'S LOCAL CIVIL RULE 56.1 STATEMENT

*Weg and Myers, P.C.*
Attorney for Plaintiff

Office and Post office Address, Telephone
Federal plaza
52 Duane Street
NEW YORK, NEW YORK 10007
(212) 227-4210