UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

G INVESTORS HOLDING LLC as successors in   :
interest to STEPHEN CARB AS TRUSTEE OF   :
LOLLYTOGS, INC. TRUST,   :

                        :  09-CV-2980 (ALC)(KNF)

              Plaintiff,   :
      vs.   :
                        :

LINCOLN BENEFIT LIFE COMPANY INC.,   :

                        :
            Defendant.   :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION SEEKING TO AMEND THE COMPLAINT AND FOR PARTIAL SUMMARY JUDGMENT AND TO STAY A SEPARATE ACTION IN <u>FEDERAL DISTRICT COURT IN DELAWARE</u>

SEYFARTH SHAW LLP
620 Eighth Avenue
New York, NY 10018-1405
(212) 218-5500

Attorneys for Defendant Lincoln Benefit Life Company Inc.

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................................ 1

STATEMENT OF FACTS ............................................................................................... 4

ARGUMENT ................................................................................................................... 4

POINT I        PLAINTIFF SHOULD NOT BE GRANTED LEAVE TO AMEND THE
COMPLAINT .............................................................................................. 4

      A.       Applicable Rule 15 Standard ................................................................ 4

      B.       Plaintiff's Proposed New Cause of Action is Futile ............................. 5

      C.       The Portion of Plaintiff's Motion Seeking Partial Summary Judgment on its
Proposed Amendment Must Also Be Denied ........................................ 9

POINT II      THE DELAWARE ACTION IS THE "FIRST-FILED" ACTION
REGARDING WHETHER LBL HAS ANY CURRENT OBLIGATION
TO PAY PLAINTIFF ANY DEATH BENEFIT; PLAINTIFF HAS
FAILED TO ESTABLISH ANY LEGAL OR FACTUAL BASIS FOR
"STAYING" OR DISMISSING" THE DELAWARE ACTION ...................... 12

CONCLUSION ............................................................................................................... 17

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

<u>AEP Energy Servs. Gas Holding Co. v. Bank of Am. N.A.</u>,
    626 F.3d 699 (2d Cir. 2010)........................................................................5

<u>Aetna Casualty & Sur. Co. v. ITT Hartford Ins. Co.</u>,
    249 A.D.2d 241, 672 N.Y.S.2d 310 (1st Dept.1998)..............................8

<u>American Hardware Mut. Ins. Co. v. BIM, Inc.</u>,
    885 F.2d 132 (4th Cir. 1989) ....................................................................6

<u>Anderson v. Liberty Lobby, Inc.</u>,
    477 U.S. 242 (1986)....................................................................................9

<u>Brecher v. Mutual Life Ins. Co. of New York</u>,
    120 A.D.2d 423 (1st Dep't 1986) ...........................................................7

<u>Brierwood Shoe Corp. v. Sears, Roebuck and Co.</u>,
    479 F.Supp. 563 (1979) ..........................................................................16

<u>Computer Assocs. Int'l, Inc. v. Altai, Inc.</u>,
    893 F.2d 26 (2d Cir. 1990)..............................................................14, 15

<u>D.H. Blair & Co. v. Gottdiener</u>,
    462 F.3d 95 (2d Cir. 2006)......................................................................16

<u>Ellenhorn v. Superintendent of Sec. of the State of Iowa</u>,
    No. 99 Civ. 5837, 1999 U.S. Dist LEXIS 15694 (S.D.N.Y. Oct. 8, 1999) ............................5

<u>Fasolino Foods Co., Inc. v Banca Nazionale del Lavoro</u>,
    961 F.2d 1052 (2d Cir. 1992)...................................................................8

<u>Fishoff v. Coty Inc.</u>,
    634 F.3d 647 (2d Cir. 2011).......................................................................8

<u>Forman v. Davis</u>,
    371 U.S. 178 (1962)....................................................................................4

<u>Gurary v. Winehouse</u>,
    235 F.3d 792 (2d Cir. 2000)......................................................................4

<u>Hayden v. Feldman</u>,
    159 F.R.D. 452 (S.D.N.Y. 1995) ...........................................................11

Health-Chem Corp. v. Baker,
    915 F.2d 805 (2d Cir. 1990).................................................................................4

Howley v. Town of Stratford,
    217 F.3d 141 (2d Cir. 2000)...............................................................................9

In re Preston's Estate,
    32 A.D.2d 110 (2nd Dep't 1969), reversed on other grounds by 29 N.Y.2d 364 (1972)..........7

Key Pharmaceuticals, Inc. v. Hans Lowey,
    54 F.R.D. 447 (S.D.N.Y. 1972) ........................................................................11

Knowles v. C.I.T. Corp.,
    346 So.2d 1042 (Fla. 1st DCA 1977) ...................................................................5

Lee v. Regal Cruises, Ltd.,
    916 F. Supp. 300 (S.D.N.Y. 1996) ......................................................................4

Luizzi v. Green Mountain Agency, Inc.,
    548 F. Supp. 2d 1 (E.D.N.Y. 2008) .....................................................................5

M/A-Com Security Corp. v. Galesi,
    904 F.2d 134 (2d Cir. 1990)...............................................................................8

Marshall Constr., Ltd. v. Coastal Sheet Metal & Roofing, Inc.,
    569 So.2d 845 (Fla. 1st DCA 1990) ....................................................................6

Matsushita Electric Industrial Co. v. Zenith Radio Corp.,
    475 U.S. 574 (1986)..........................................................................................9

Meeropol v. Nizer,
    505 F.2d 232 (2d Cir. 1974)..............................................................................12

Nat'l Equip. Rental, Ltd. v. A.L. Fowler, D.O.,
    287 F.2d 43 (2d Cir. 1961).................................................................................12

Old Republic Ins. Co. v. Von Onweller Constr. Co.,
    239 So.2d 503 (Fla. 2d DCA 1970) .....................................................................5

Reina de Espana v. American Bureau of Shipping,
    328 F. Supp.2d 489 (S.D.N.Y. 2004)...................................................................15

Ricciuti v. N.Y.C. Transit Auth.,
    941 F.2d 119 (2d Cir. 1991)...............................................................................5

Rodriguez v. City of New York,
    72 F.3d 1051 (2d Cir. 1995)...............................................................................9

Sirignano v. Chicago Ins. Co.,
    192 F.Supp.2d 199 (S.D.N.Y. 2002) ........................................................................8

Smith v. Securities and Exchange Commission,
    129 F.3d 356 (6th Cir. 1997) ..............................................................................15

Snyder v. National Union Fire Ins. Co.,
    688 F. Supp. 932 (S.D.N.Y. 1988) .........................................................................5

Spin Master Ltd. v. Bureau Veritas Consumer,
    No. 08 CV 923, 2011 WL 1549456 (W.D.N.Y. March 7, 2011) ............................4

Telemundo Television Studios, LLC v. Aequicap Ins. Co.,
    38 So. 3d 807 (Fla. Dist. Ct. App. 2010) ...............................................................7

Tex. Liquids Partners, LLC v. Wells Fargo Bank, N.A.,
    No. 09 Civ. 1655, 2010 U.S. Dist. LEXIS 108927 (S.D.N.Y. Oct. 8, 2010) ...........5

Tommy Hilfiger Licensing Inc. v. Bradlees, Inc.,
    No. 99 CV 4677, 2001 WL 1702151 (S.D.N.Y. Jan. 11, 2002) ...........................15

Travelers Ins. Co. v. Castro,
    341 F.2d 882 (1st Cir. 1965) .................................................................................7

Van Buskirk v. N.Y. Times Co.,
    325 F.3d 87 (2d Cir. 2003) ....................................................................................4

**STATUTES**

28 U.S.C. 1404(a) ....................................................................................................17

**OTHER AUTHORITIES**

3 James Wm. Moore et al., Moore's Federal Practice, § 13.13 (3d ed 2007)...............15

11 NYCRR 216.6 .......................................................................................................8

Fed. R. Civ. P. 11 ......................................................................................................8

Fed. R. Civ. P. 12(b)(6).............................................................................................5

Fed. R. Civ. P. 13(a) ..........................................................................................14, 15

Fed. R. Civ. P. 15 ............................................................................................1, 4, 11

Fed. R. Civ. P. 56 ...............................................................................................1, 9

## PRELIMINARY STATEMENT

Defendant Lincoln Benefit Life Company Inc. ("LBL") respectfully submits this memorandum of law in opposition to the motion of plaintiff G Investors Holding LLC, as Successors in Interest to Stephen Carb as Trustee of Lollytogs, Inc. Trust ("Plaintiff" or "G Investors"),[1] seeking an Order: (i) pursuant to Fed. R. Civ. P. 15 granting Plaintiff leave to further amend its amended complaint to include a cause of action for breach of contract (the "Proposed Amendment") arising out of LBL's purported failure to pay a death benefit in the amount of $29 Million (the "Death Benefit") under two term life insurance policies (the "Term Policies") issued by LBL; (ii) pursuant to Fed. R. Civ. P. 56 granting Plaintiff partial summary judgment on its proposed breach of contract claim to the extent of demanding an immediate payment of approximately $1.6 million, representing the so-called "undisputed" portion of the Death Benefit; and (iii) "dismissal" or "stay" of an action recently commenced by LBL against G Investors in the United States District Court for the District of Delaware -- captioned Lincoln Benefit Life Company Inc. v. G Investors Holdings LLC, Civil Action No. 12-730 LPS (the "Delaware Action") -- seeking a judicial declaration that LBL is not obligated to pay Plaintiff any portion of the Death Benefit until the resolution of the instant action and the payment of all premiums due and owing to LBL has been satisfied.

Reduced to its essentials, the instant motion is nothing more than Plaintiff's futile and desperate effort to obtain a gift or an "advance" of more than $1.6 million, to which it is not

---

[1]  During the pendency of the instant action, LBL consented to the change of the beneficiary of the Term Policies from Plaintiff's predecessor, Stephen Carb ("Carb"), to G Investors and the parties agreed to change the caption of the instant action to reflect the change of the plaintiff from Carb to G Investors.  By So Ordered Stipulation dated August 15, 2011, the transfer of the beneficiary from Carb to G Investors was not intended to change, alter or modify any of the claims or defenses in the instant action and/or the issues to be determined.

1

contractually or legally entitled, by advancing the position that Plaintiff is currently "owed' such portion of the Death Benefit notwithstanding the undisputed fact that Plaintiff has failed to comply with the most basic of obligations under the Term Policies, to wit, the payment to LBL of the substantial premiums due under the Term Policies. As set forth in greater detail below, Plaintiff's motion is without legal or factual merit and should be denied in its entirety.

First, as noted above, granting Plaintiff leave to amend the complaint to assert a breach of contract claim would be futile and the Proposed Amendment fails to state a claim upon which relief can be granted because Plaintiff cannot establish that it has fully performed its obligations under the Term Policies, to wit, the payment of premiums owed LBL, or that LBL breached any contractual obligations owed to Plaintiff. It is not disputed that the central issue scheduled to be tried before this Court on October 29, 2012 is whether LBL breached its contractual obligation to Plaintiff by refusing to permit Plaintiff to convert the Term Policies to universal life policies. Unless Plaintiff is successful at that trial, pursuant to a previous Court Order issued by Judge Richard Berman (the "September 2009 Order"), Plaintiff will have sixty (60) days after entry of any judgment to pay LBL more than $18 million in overdue and earned premiums, in addition to being directed to release to LBL more than $8 million in premiums that are currently in escrow. Therefore, in the absence of any determination that Plaintiff has a right to convert the Term Policies and until LBL's receipt of payment in full of premiums owed under the Term Policies, there can be no claim of breach of contract.

Plaintiff's attempt to seek partial summary judgment with respect to what may be charitably characterized as a claim for an immediate "advance" of $1,682,510 -- representing the alleged difference between the amount of the Death Benefit ($29 million) and the maximum premium that Plaintiff will be required to pay if unsuccessful at trial ($27,317,490) -- is frivolous

and must also be rejected.  Until this Court determines the applicable policies and premiums --
which is the entire crux of the instant action (as Plaintiff readily admits) -- and Plaintiff has paid
LBL those premiums, Plaintiff is not entitled to receive a single penny of the Death Benefit, let
alone over $1.6 million.  Plaintiff's position on this issue is made all the more outrageous when
viewed against the fact that Plaintiff is a single purpose entity and has offered no assurance that
it has the financial wherewithal or intends to pay the balance of more than $18 million in
premiums that will be due (over and above the escrow amount) if it is not successful at trial.

Although irrelevant, Plaintiff's assertion that there is a difference between the Death
Benefit payment and premiums owed to LBL is also mathematically incorrect.  As discussed
more fully below, if LBL prevails at trial, Plaintiff will owe LBL, not only the principal sum of
more than $27 million in unpaid premiums, but also pre-judgment interest going back to 2009 in
the additional sum of more than $4.7 million.  Thus, the full amount of the judgment to which
LBL would be entitled exceeds the Death Benefit amount.

Finally, that part of Plaintiff's motion that seeks to "stay" or "dismiss" the Delaware
Action previously commenced by LBL, seeking a judicial declaration with respect to G
Investors' improper death benefit claim, is equally meritless.  The Delaware Action was properly
filed immediately after LBL received the improper and premature demand for payment of the
Death Benefit and is the "first-filed" action with respect to that issue, not the instant action or the
Proposed Amendment.  The claim in the Delaware Action seeking a judicial declaration is not in
the nature of a compulsory counterclaim to the action at bar, and the issues to be determined in
the different actions are not the same.  The prosecution of the Delaware Action will have no
impact on the October 29 trial here and no basis exists for enjoining or otherwise interfering with
the Delaware Action.

## STATEMENT OF FACTS

The Court is respectfully referred to the accompanying Affidavit of Richard M. Resnik ("Resnik Affidavit") for a recitation of the relevant and documented facts.

## ARGUMENT

## POINT I

## PLAINTIFF SHOULD NOT BE GRANTED LEAVE TO AMEND THE COMPLAINT

### A.   Applicable Rule 15 Standard

Plaintiff seeks leave to amend the Complaint to add a new cause of action for breach of contract, premised upon LBL's purported failure to pay the Death Benefit under the Term Policies.

Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely given where justice so requires." Fed. R. Civ. P. 15(a).  To determine whether "justice so requires" permitting leave to amend a complaint, courts consider whether the amendment: (1) has been delayed unduly; (2) is sought for dilatory purposes or is made in bad faith; (3) would cause prejudice to the opposing party; or (4) would be futile.  Lee v. Regal Cruises, Ltd., 916 F. Supp. 300, 303 (S.D.N.Y. 1996).

"[I]f amendment would be futile -- that is, if the amended pleading does not state a cause of action or is otherwise inadequate -- then leave to amend can and should be denied." Spin Master Ltd. v. Bureau Veritas Consumer, No. 08-CV-923, 2011 WL 1549456 at *6 (W.D.N.Y. March 7, 2011); Gurary v. Winehouse, 235 F.3d 792, 801 (2d Cir. 2000) (affirming District Court's denial of leave to amend); see also, Forman v. Davis, 371 U.S. 178, 182 (1962) (finding that courts have not hesitated to deny motions seeking leave to amend where it appears that such grant would be futile or unlikely to be productive); Van Buskirk v. N.Y. Times Co., 325 F.3d 87, 91-92 (2d Cir. 2003) (holding that where amendment would be futile, denial of leave to amend is

4

proper.); Health-Chem Corp. v. Baker, 915 F.2d 805, 810 (2d Cir. 1990) ("where . . . there is no

merit in the proposed amendments, leave to amend should be denied"); Ellenhorn v.

Superintendent of Sec. of the State of Iowa, No. 99 Civ. 5837, 1999 U.S. Dist LEXIS 15694 at

*20-21 (S.D.N.Y. Oct. 8, 1999) ("courts will not grant leave to amend when a complaint is

defective to such an extent that amendment would be futile.").

The courts in this Circuit have consistently denied leave to amend on futility grounds,

where the proposed amended pleading could not withstand a motion to dismiss pursuant to Rule

12(b)(6). See AEP Energy Servs. Gas Holding Co. v. Bank of Am. N.A., 626 F.3d 699, 726 (2d

Cir. 2010); Ricciuti v. N.Y.C. Transit Auth., 941 F.2d 119, 123 (2d Cir. 1991); Tex. Liquids

Partners, LLC v. Wells Fargo Bank, N.A., No. 09 Civ. 1655, 2010 U.S. Dist. LEXIS 108927 at

*4 (S.D.N.Y. Oct. 8, 2010).

**B.       Plaintiff's Proposed New Cause of Action is Futile**

Under Florida law,[2] to state a claim for breach of contract, a plaintiff must establish: (1)

the existence of a contract; (2) a breach of the contract; and (3) damages resulting from the

breach. See Knowles v. C.I.T. Corp., 346 So.2d 1042, 1043 (Fla. 1st DCA 1977). Critically,

Plaintiff must also prove performance of its obligations under the contract or a legal excuse for

its nonperformance. See Old Republic Ins. Co. v. Von Onweller Constr. Co., 239 So.2d 503, 505

---

[2]  Here, Florida substantive law governs because the Term Policies were issued in Florida. See
Snyder v. National Union Fire Ins. Co., 688 F. Supp. 932, 934-935 (S.D.N.Y. 1988) (applying
New York law because New York was the state in which the subject insurance policy was
issued); Luizzi v. Green Mountain Agency, Inc., 548 F. Supp. 2d 1, 6 (E.D.N.Y. 2008) ("Under
New York's choice of law rules, where the action arises out of a dispute over an insurance
contract, the court applies the law of the state where the policy was issued."). (See Judge
Berman's Decision and Order in connection with LBL's summary judgment motion, Resnik
Affidavit, Exh. F, p. 2).

(Fla. 2d DCA 1970); <u>Marshall Constr., Ltd. v. Coastal Sheet Metal & Roofing, Inc.</u>, 569 So.2d 845, 848 (Fla. 1st DCA 1990).

Here, Plaintiff cannot establish its own performance under the Term Policies. As a preliminary matter, it is undisputed that:

(i)    the central issue in the instant action "revolves around whether or not Plaintiff was entitled to convert the term policy into a [universal] policy on October 1, 2009 and November 8, 2009 ... and the corresponding premiums to be paid under said policies." (Plaintiff's Memorandum of Law in Support of its Motion to Dismiss the Delaware Pleading, to Amend the Complaint and for Partial Summary Judgment ("Plf. Memo."), p. 7);

(ii)    until there is a determination in the instant action with respect to Plaintiff's right to convert the Term Policies and the applicable premiums thereunder, the only policies currently in force and effect -- and the policies that Plaintiff specifically referenced in making its death benefit claim -- are the Term Policies; and

(iii)    if it is determined in the instant action that Plaintiff had no right of conversion, Plaintiff will be obligated to pay <u>$18,559,165 to Lincoln in earned premiums,</u> as well as release the sum of $8,758,325 currently being held in escrow.

It is also indisputable and well documented that Plaintiff has not paid LBL any of the premiums due under the Term Policies for the previous three policy years, notwithstanding the Term Policies' express provision requiring payment of premiums "[t]o keep this policy in force during the lifetime of the insured... when they are due." (Resnik Affidavit, Exhs. B and C, p. 7); <u>see</u> <u>American Hardware Mut. Ins. Co. v. BIM, Inc.</u>, 885 F.2d 132 (4th Cir. 1989) (the premium is the price of insurance and payment of the premium is the essence of the insurance contract;

where there is no payment, there is no insurance); Couch on Insurance § 72:1 ("if the insured

could force the insurer to accept premium payments in whatever portion of the total premium

that the insured felt like paying at any given time, insurers would do business in a world of

financial chaos that would adversely affect both insurers and insureds: with budgeting

impossible, it would be a matter of pure chance whether a given insurer had sufficient funds

available to pay major losses."); see also Telemundo Television Studios, LLC v. Aequicap Ins.

Co., 38 So. 3d 807, 809 (Fla. Dist. Ct. App. 2010) (finding that if the language of an insurance

policy is unambiguous, it must be construed to mean what it says and nothing more); Brecher v.

Mutual Life Ins. Co. of New York, 120 A.D.2d 423 (1st Dep't 1986) (in spite of insurer's typical

practice of accepting late payments, insurer was entitled to deny death benefit due to

nonpayment of premium); In re Preston's Estate, 32 A.D.2d 110, 113 (2nd Dep't 1969), reversed

on other grounds by 29 N.Y.2d 364 (1972) (obligation of an insurer to pay the proceeds of a life

insurance policy on occurrence of insured's death is conditioned on timely payment of

premiums); Travelers Ins. Co. v. Castro, 341 F.2d 882, 884 (1st Cir. 1965) ("It is elementary that

timely payment of premiums is the foundation of a life insurance contract.").

It requires no extended argument to conclude that the lesser amount currently held in

escrow pursuant to the September 2009 Order -- representing the premiums that Plaintiff would

be required to pay LBL only if Plaintiff is successful at trial -- does not constitute "full

performance" under the Term Policies.  The sole purpose of the September 2009 Order (Resnik

Affidavit, Exh. M) was to prevent the termination of the Term Policies while Plaintiff litigated

its claims at bar.  As Plaintiff's counsel stated in emails leading up to the entry of the September

2009 Order, Plaintiff was merely seeking to "hold that election process and the premiums to be

paid in abeyance" until the instant lawsuit was tried and "at that point my client will tender to

your client the appropriate premium," and also fully acknowledged that payment "of the

balance" of the premiums due LBL under the Term Policies was a pre-condition "to continue the

policies on a term life basis." (Resnik Affidavit, Exhs. G and H) (emphasis added). Since that

pre-condition has manifestly not occurred, Plaintiff cannot plead its full performance under the

Term Policies without risk of violating Rule 11 of the Fed. R. Civ. P.

The consequences of Plaintiff's undisputed failure to pay the premiums due under the

Term Policies are fatal to the Proposed Amendment. Without establishing the essential elements

of Plaintiff's performance, no basis exists for a breach of contract claim. On this basis alone,

Plaintiff's motion for leave to amend the complaint should be denied as futile.[3]

---

[3]  Plaintiff's claim that LBL purportedly breached its duty of good faith and fair dealing fails on
two counts. First, Florida, not New York, is the correct choice of law. Second, the New York
cases cited by Plaintiff in support of its contention are either favorable to LBL or inapposite.
Both M/A-Com Security Corp. v. Galesi and Fasolino Foods Co., Inc. v Banca Nazionale del
Lavoro support LBL's position. In M/A-Com, the court rejected defendant's defense of non-
payment based upon the duty of good faith and fair dealing, finding that plaintiff was simply
acting within its rights and interests. 904 F.2d 134, 136 (2d Cir. 1990). In Fasolino, the court
also declined to extend the duty to include obliging defendant to relax any terms of the contract
in the face of plaintiff's default. 961 F.2d 1052, 1057 (2d Cir. 1992). Here, LBL is simply acting
within its own rights and interests and is not obligated to relax the terms of the Term Policies
simply because Plaintiff has not fully performed. Fishoff v. Coty Inc., 634 F.3d 647 (2d Cir.
2011) is plainly inapposite because, unlike the defendant there, LBL has not arbitrarily sought to
deny a discretionary benefit provided in the contract. LBL is merely enforcing the most basic
terms of the Term Policies. Plaintiff has no claim to the Death Benefit until it has fully complied
with the Term Policies by paying the total premiums due and earned. Finally, Plaintiff's reliance
on 11 NYCRR 216.6 (Plf. Memo., pgs. 21-22) is inapposite, as 11 NYCRR 216.6, commonly
known as the Unfair Claims Settlement Practices and Claim Cost Control Measures Act, does
not create a private right of action. See Sirignano v. Chicago Ins. Co., 192 F.Supp.2d 199, 208
(S.D.N.Y. 2002); Aetna Casualty & Sur. Co. v. ITT Hartford Ins. Co., 249 A.D.2d 241, 672
N.Y.S.2d 310 (1st Dept.1998).

**C.      The Portion of Plaintiff's Motion Seeking Partial Summary Judgment on its Proposed Amendment Must Also Be Denied**

Initially, Plaintiff's motion for partial summary judgment seeking the immediate payment of a portion of the Death Benefit must be denied because the underlying proposed claim upon which it is predicated is futile and fails to state a cause of action.  (See discussion, supra, pgs. 5-8).

Even if the Court permits Plaintiff's Proposed Amendment, the motion for partial summary judgment must nevertheless be denied.  Summary judgment is warranted only upon a showing "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "The party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists ...." Rodriguez v. City of New York, 72 F.3d 1051, 1060-61 (2d Cir. 1995).  In determining whether that burden has been met, the court is required to resolve all ambiguities and credit all factual inferences that could be drawn in favor of the party against whom summary judgment is sought.  See, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (finding summary judgment appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party").  "It is not the province of the court itself to decide what inferences should be drawn ...; if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper ...." Howley v. Town of Stratford, 217 F.3d 141, 151 (2d Cir. 2000).

As part of Plaintiff's motion for partial summary judgment, Plaintiff urges the Court to direct LBL to make immediate payment to Plaintiff of $1,682,510 (Plf. Memo., p. 22) -- purportedly representing the difference between the Death Benefit and the maximum premium to

9

which LBL would allegedly be entitled if successful at trial. As fully explained above, contrary to Plaintiff's assertions, the so-called "undisputed" amount of $1,682,510 is absolutely disputed because LBL does not believe it is obligated to pay any portion of the Death Benefit until: (i) there has been a final determination as to the rights and obligations of the parties at bar -- namely, what policies govern; and (ii) the corresponding premiums are fully paid.[4] Therefore, even if this Court grants Plaintiff's motion to amend the complaint, a genuine issue of material fact manifestly exists that defeats Plaintiff's motion for partial summary judgment.

Moreover, the entire predicate of Plaintiff's summary judgment argument, to wit, that the amount of the Death Benefit exceeds the premiums to which LBL maybe entitled, is both irrelevant and mathematically incorrect. As discussed and analyzed more fully in the accompanying Resnik Affidavit, if LBL prevails at trial, LBL will be entitled to unpaid premiums in the principal amount of $27,313,490, plus interest of approximately $4,766,236 (Resnik Affidavit, Exh. N), a total sum in excess of the $29,000,000 Death Benefit.

It is respectfully submitted that Plaintiff's attempt to require LBL to immediately pay Plaintiff the sum of $1,682,510 and deposit $18,559,165.00 into escrow (Plf. Memo., p. 22) is not made in good faith and is a stunt intended to force a settlement of a meritless case on the eve of trial. Separate and apart from the undisputed and documented facts set forth in the accompanying Resnik Affidavit establishing no breach, it is critical to note that Plaintiff is a single purpose entity, formed specifically for the assignment of the Term Policies from the original plaintiff. (Resnik Affidavit, Exhs. V and W). It likely has no meaningful assets and if

---

[4] Although not fully articulated, what Plaintiff appears to be seeking is a credit or set-off against the Death Benefit. This is simply nonsensical and should be swiftly rejected, as there is no basis or support -- contractual, case law or otherwise -- that would entitle Plaintiff to any such credit or set-off and it has cited no case authority for such proposition.

LBL is successful at trial, Plaintiff is unlikely to be able to satisfy the substantial money judgment that will be entered for more than $18 million, thereby compelling LBL to commence further litigation to collect these earned premiums. Indeed, Plaintiff's counsel was given every opportunity at the recently held pre-motion conference to assure this Court that it has the means to satisfy any money judgment that may be awarded against it and chose to avoid addressing this issue. (See Transcript of Pre-Motion Conference, Resnik Affidavit, Exh. U).

At bar, Plaintiff has not only failed to meet its burden of identifying evidence it believes demonstrates the absence of a genuine issue of material fact, but in addition, asks the Court to turn a blind eye to basic and fundamental tenets of contract law in order to manipulate the terms of the Term Policies to suit Plaintiff's own interests. This Court should prevent such an outcome and deny Plaintiff's so-called partial summary judgment seeking a portion of the Death Benefit.[5]

---

[5] It is respectfully urged that the risk to LBL in not being able to collect more than $18 million in earned premiums from Plaintiff cannot be overstated. If this Court is inclined to granting Plaintiff leave to amend, LBL respectfully requests that the Court condition its leave upon Plaintiff's posting of a bond in the amount of $18,559,165 -- representing the additional premiums due to LBL if LBL is successful at trial. Alternatively, given Plaintiff's status as a single purpose entity, LBL requests that the Court condition its leave upon LBL's right to take an immediate deposition of Plaintiff to satisfy to the Court that Plaintiff has sufficient funds to satisfy the more than $18 million judgment that may be awarded to LBL if Plaintiff is unsuccessful at trial. Under Rule 15(a) of the FRCP, a court has broad discretion and authority to impose conditions on the grant of leave to amend in order to prevent prejudice, including the posting of a bond. See Key Pharmaceuticals, Inc. v. Hans Lowey, 54 F.R.D. 447, 449-450 (S.D.N.Y. 1972) (conditioning the filing of the amended complaint upon plaintiff's posting a security payment to cover royalty payments owed defendant; see also Hayden v. Feldman, 159 F.R.D. 452, 454 (S.D.N.Y. 1995) (the ability of the Court to impose conditions allows the court to balance the interests of the party seeking the amendment against those of the party objecting to it). It is respectfully submitted that under the circumstances at bar, LBL should not be put in the position of preparing for and proceeding with a costly and time consuming trial when there is reason to believe Plaintiff is currently unable to satisfy the terms of the September 2009 Order if unsuccessful.

## POINT II

### THE DELAWARE ACTION IS THE "FIRST-FILED" ACTION REGARDING WHETHER LBL HAS ANY CURRENT OBLIGATION TO PAY PLAINTIFF ANY DEATH BENEFIT; PLAINTIFF HAS FAILED TO ESTABLISH ANY LEGAL OR FACTUAL BASIS FOR "STAYING" OR DISMISSING" THE DELAWARE ACTION

Plaintiff's motion also seeks an Order "dismissing" or "staying" the Delaware Action by asserting the unfounded position that the claim for breach of contract contained in the proposed second amended complaint at bar is the "first-filed" action regarding Plaintiff's demand for immediate payment of the Death Benefit.  The Delaware Action, which was filed on or about June 11, 2012, is the "first-filed" action regarding the death benefit claim.  (Resnik Affidavit, Exh. T).  Any other position simply ignores the facts.[6]

As a preliminary matter, Plaintiff's motion to "dismiss" or "stay" the Delaware Action is improper and must be denied outright because this Court lacks the authority to order that the Delaware Action be transferred to New York, to consolidate the two actions, or to otherwise "order another [district court] to divest itself of jurisdiction.  See Nat'l Equip. Rental, Ltd. v. A.L. Fowler, D.O., 287 F.2d 43, 47 (2d Cir. 1961).

To the extent this Court elects to treat this aspect of Plaintiff's motion as one seeking to enjoin LBL from prosecuting or proceeding with the Delaware Action, such re-cast request for relief is nevertheless inappropriate and should be denied for one or more of the following reasons:

---

[6]  The undisputed fact that the Delaware Action is the "first-filed" claim with respect to any death benefit payment claim furnishes yet another basis for denying Plaintiff's motion to amend its complaint (see discussion at Point I, supra).  Under this Circuit's "first-filed" rule, "where an action is brought in one federal district court and a later action embracing the same issue is brought in another federal court, the first court has jurisdiction to enjoin the prosecution of the second action."  Meeropol v. Nizer, 505 F.2d 232, 235 (2d Cir. 1974).  Here, the predicate for applying the first-filed rule to Plaintiff's proposed second amended complaint clearly exists.

(i)     The issues in the New York action and the Delaware Action are not the same, not
        duplicative of each other and the filing of the Delaware Action has no impact on the
        October 29 trial date here;

(ii)    The declaratory judgment sought in the Delaware Action is not in the nature of a
        compulsory counterclaim that could or should have been asserted in the New York
        Action since the factual predicate for the Proposed Amendment -- i.e. the death of
        Samuel Gindi ("Gindi") -- did not come into existence for more than three years after the
        claims at bar arose;[7] and

(iii)   The operative complaint before this Court does not seek any relief with respect to
        whether LBL is obligated to immediately pay the Death Benefit under the Term Policies
        that Plaintiff now claims is due and owing.

        Instead, the only issue before this Court is whether Plaintiff was entitled to convert the

two Term Policies insuring the life of Gindi to universal policies.  The Delaware Action seeks a

judicial declaration that LBL is not obligated to pay the Death Benefit to Plaintiff until the

determination and conclusion of the New York Action.  Therefore, the Delaware Action is not

dependent or contingent upon the instant action for any such declaration.  Until the New York

Action is tried, it will not be determined which type of policy governs the parties' relationship

and their respective obligations thereunder, including whether there are substantial additional

premiums that Plaintiff will be obligated to pay to LBL as a pre-condition to payment of the

Death Benefit.  The pleading in the Delaware Action addresses precisely that issue, which issue

---

[7]  Plaintiff does not dispute that the Delaware Court has full and complete jurisdiction over the
parties, one of which, G Investors, was formed in that jurisdiction.

13

is not currently before the Court.  The Delaware Action and the New York action, therefore, involve two separate and distinct claims.

The Second Circuit decision in <u>Computer Assocs. Int'l, Inc. v. Altai, Inc.</u>, 893 F.2d 26 (2d Cir. 1990) strongly suggests the proper result to be reached at bar.  In <u>Computer Associates</u>, the plaintiff Computer Associates filed an action against Altai, Inc. in the Eastern District of New York, alleging copy right infringement, trade secret misappropriation and unfair competition.  893 F.2d at 28.  Months after the Computer Associates filing, Altai commenced another lawsuit in the Northern District of Texas claiming tortious interference, libel, slander and various antitrust violations against Computer Associates.  <u>Id</u>.  Altai alleged that the tortious interference, libel and slander related not only to Computer Associates' initiation of the New York action, but also to later misrepresentations made by Computer Associates following the filing of suit.  <u>Id</u>.  The New York District Court denied the application to enjoin Altai from proceeding in Texas.  <u>Id</u>.  On appeal, Computer Associates argued that Altai's claims should have been interposed as compulsory counterclaims in the New York action and Altai should have been enjoined from prosecuting the Texas action.  <u>Id</u>.  The Second Circuit affirmed by holding that conduct occurring after the initiation of the New York action and included in the Texas claims is not a compulsory counterclaim and that it would have been inappropriate to enjoin

14

prosecution of the Texas action under the first-filed rule.[8]  The Second Circuit also noted that

Altai's claims "present legal issues" not found in the New York action commenced by Computer

Associates.  Id. at 29-30; see also, Smith v. Securities and Exchange Commission, 129 F.3d 356,

361 (6th Cir. 1997) ("A court abuses its discretion when it enjoins a party from proceeding in

another suit that is not truly duplicative of it.").

     Although LBL agrees with Plaintiff's argument  (Plf. Memo., pgs. 10-13) that there are

no unique facts present at bar warranting an exception to the application of the "first-filed" rule,

since it is fully established on the record at bar that the Delaware Action is "first-filed" regarding

the so-called death benefit claim, the burden is on Plaintiff to establish an "exception" to the

application of the rule.  Plaintiff will not be able to sustain that burden.  There is no hint of an

improper anticipatory filing (an exception recognized by the courts), as the Delaware Action was

not filed under any apparent threat of an identical filing in this Court by Plaintiff.  The Delaware

Action was filed simply because LBL received an inappropriate and premature death benefit

demand (Resnik Affidavit, Exh. R) that had been sent to LBL's general mailbox as an obvious

tactical maneuver notwithstanding the fact that counsel for Plaintiff had been previously advised

---

[8] Rule 13(a)(1) of the Federal Rules of Civil Procedure provides that for counterclaims to be
compulsory, they must be claims that are mature at the time of the defendant's response to the
complaint and arise out of the same transaction or occurrence.  Tommy Hilfiger Licensing Inc. v.
Bradlees, Inc., No. 99 CV 4677, 2001 WL 1702151 at *5 (S.D.N.Y. Jan. 11, 2002); Reina de
Espana v. American Bureau of Shipping, 328 F. Supp.2d 489, 493 (S.D.N.Y. 2004); 3 James
Wm. Moore et al., Moore's Federal Practice, § 13.13 (3d ed 2007).  Because LBL's claims in the
Delaware Action arose three years after commencement of the New York action, they are not
compulsory counterclaims.  However, the breach of contract claim in the Proposed Amendment
is a compulsory counterclaim to the claims asserted in the first-filed Delaware Action.  Indeed,
Fed. R. Civ. P. 13(a) requires that a "pleading shall state as a counterclaim any claim ... if it
arises out of the transaction or occurrence that is the subject matter of the opposing party's
claim."  Thus, Plaintiff should assert as a counterclaim in the Delaware Action its proposed
breach of contract claim.

in writing (Resnik Affidavit, Exh. S) that all communications involving the Term Policies should take place between counsel.  At the same time LBL filed the Delaware Action, there was no threat of litigation by Plaintiff, explicitly or implicitly.  Indeed, it is Plaintiff's proposed amended pleading that is retaliatory.  There cannot be any allegation of improper forum because G Investors is a Delaware entity and the Delaware court has jurisdiction.

Any argument regarding the "balance of conveniences" will also be meritless because: (i) LBL's choice of forum was motivated by G Investor's own choice of state of formation.  See D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 107 (2d Cir. 2006) (plaintiff's choice of forum "is given great weight"); (ii) there will be minimal pre-trial discovery required and LBL may choose to move for summary judgment in the Delaware Action as soon as issue has been joined; (iii) Plaintiff should be estopped from claiming that the Delaware forum is inconvenient when it is a Delaware entity  (Resnik Affidavit, Exh. W) and has voluntarily subjected itself to the laws of Delaware.  Brierwood Shoe Corp. v. Sears, 479 F.Supp. 563 at 566 (1979) ("Ordinarily a corporation is properly sued in its state of incorporation and expects to be held accountable for its actions in that state."); (iv) since the Term Policies were issued to a Florida resident and it is to be governed by the law of Florida, other than the pendency of this action, New York has little interest in enforcing the parties' rights and obligations under the Term Policies; and finally (v) Plaintiff's self-styled "relative wealth" argument (Plf. Memo., p. 15) is both irrelevant and absurd.  The principal of G Investors is Raymond Gindi, the executive officer of the well-known Century 21 Department Store chain (see the accompanying Affidavit of Jay W. Cho, Exh. X).

Accordingly, because the issues and relief sought in the Delaware Action are unrelated to the issues and relief sought at bar and are not in the nature of a compulsory counterclaim that could or should have been asserted in the New York action, there is no basis for enjoining the

16

prosecution of the Delaware Action.  If Plaintiff believes that forum is less convenient than New York, the proper remedy is through a motion to transfer under 28 U.S.C. 1404(a) filed in the Delaware Action, not the instant motion.

## CONCLUSION

It is respectfully submitted that Plaintiff's motion should be denied in its entirety.  That part of the motion seeking leave to amend the current complaint must be denied because it is self-evident that Plaintiff cannot properly plead the most basic of elements of a breach of contract claim, to wit, that it has fully performed its obligations under the Term Policies. Similarly, Plaintiff's attempt to seek partial summary judgment with respect to its poorly pleaded proposed claim, should be denied and recognized for what it is -- an attempt to "grab", as an improper "advance", a portion of the Death Benefit without providing assurance it can satisfy the judgment of more than $18 million that LBL will be entitled to receive unless Plaintiff is successful at trial.

Finally, Plaintiff's attempt to "stay" or "dismiss" or enjoin prosecution of the Delaware Action is based, in its entirety, on a faulty premise -- that the current action scheduled to be tried commencing on October 29 is the "first-filed" action.  It is not.  No harm will come to Plaintiff or this trial if the Delaware Action proceeds.  As a practical matter, if Plaintiff is genuinely concerned about conserving judicial resources, it should simply withdraw its improper Death

Benefit demand and swiftly proceed to trial in October.

Dated: New York, New York
      August 2, 2012

                          Respectfully Submitted,

                          SEYFARTH SHAW LLP

                          By: s/ Richard M. Resnik
                              Richard M. Resnik (RR 1407)
                              Jay W. Cho (JC 0102)
                              Sarah Izfar (SI 0601)
                              620 Eighth Avenue
                              New York, New York 10018
                              (212) 218-5500

                              Attorneys for Defendant
                              Lincoln Benefit Life Company Inc.