09-103.02

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| G INVESTORS HOLDING LLC as successors in interest to STEPHEN CARB AS TRUSTEE OF LOLLYTOGS, INC. TRUST,　　　　Plaintiff,　　-against-　　LINCOLN BENEFIT LIFE COMPANY, INC.　　　　Defendant. | 09 CIV 2980 ALC KNF |

## PLAINTIFF'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS THE DELAWARE PLEADING, TO AMEND THE COMPLAINT AND FOR PARTIAL SUMMARY JUDGMENT

Dennis T. D'Antonio (DD 0973)
Joshua L. Mallin (JM 0474)
Derek M. Zisser (DZ 1984)

**WEG AND MYERS, P.C.**
*Attorneys for Plaintiff*
Federal Plaza
52 Duane Street, 2nd Floor
New York, New York 10007
(212) 227-4210

## **TABLE OF CONTENTS**

Table of Authorities ……………………………………………………………………… ii

Preliminary Statement ……………………………………………………………………… 1

I.    PURSUANT TO THE TERMS OF THE SUBJECT POLICIES AND
JUDGE BERMAN'S SEPTEMBER 11, 2009 ORDER, PLAINTIFF
HAS FULLY PERFORMED AND IS THEREFORE ENTITLED
TO AMEND ITS COMPLAINT AND FOR SUMMARY JUDGMENT
ON ITS PROPOSED AMENDED CAUSE OF ACTION ……………….. 4

II.   PAYMENT OF THE DEATH BENEFIT UPON THE DEATH
OF THE NAMED INSURED IS THE MOST BASIC RIGHT
OF A BENEFICIARY UNDER A POLICY OF LIFE INSURANCE …… 6

III.  THE DELAWARE ACTION IS NOT THE "FIRST-FILED ACTION" … 8

Conclusion …………………………………………………………………………... 10

i

# TABLE OF AUTHORITIES

**Cases**

Computer Assocs. Int., Inc. V. Altai, Inc.,
  893 F.2d 26 (2d Cir 1990) ................................................................................................ 9, 10

Equip. Rental, Ltd. v. Fowler,
  287 F.2d 43 (2d Cir. 1961) ..................................................................................................... 9

Ilyaich v. Bankers Life Ins. Co. of New York,
  47 A.D.3d 614 ........................................................................................................................ 6

Klaxon Co. v. Stentor Electric Mfg. Co.,
  313 U.S. 487, 61 S.Ct. 1020 (1941) ....................................................................................... 7

Olin Corp. v. Ins. Co. of North America,
  743 F. Supp. 1044 (S.D.N.Y. 1990) ................................................................................... 7, 8

Smith v. S.E.C.,
  129 F.3d 356 (6th Cir 1997) ................................................................................................ 10

United States v Bess,
  357 US 51 (1958) ................................................................................................................... 6

**Rules**

Fed R. Civ. P. 56 ........................................................................................................................ 1

Fed. R. Civ. P. 12 (b) (3) ............................................................................................................ 1

Fed. R. Civ. P. 15 (a) (2) ............................................................................................................ 1

**Regulations**

11 NYCRR 216.6 ....................................................................................................................... 7

**PRELIMINARY STATEMENT**

Plaintiff G INVESTORS HOLDING LLC as successors in interest to STEPHEN CARB AS TRUSTEE OF LOLLYTOGS, INC. TRUST (hereinafter "Plaintiff"), submits this Memorandum of Law in further support of its motion which seeks an Order: a) pursuant to Fed. R. Civ. P. 12 (b) (3), dismissing the recently commenced Delaware District Court Action, *Lincoln Benefit Life Company Inc. v. G Investors Holdings LLC*, Civil Action No. 12-730 LPS, or, in the alternative, for a stay of all proceedings in the Delaware District Court pending the trial of the instant action which is scheduled for October 29, 2012; b) pursuant to Fed. R. Civ. P. 15 (a) (2), for leave to amend the Complaint to include a cause of action sounding in breach of contract due to LBL's refusal to pay the death benefit due and owing under the policies which are the subject of the instant action; and c) pursuant to Fed R. Civ. P. 56, granting partial summary judgment by declaring that LBL is liable to Plaintiff for the undisputed amount due under the policies' Death Benefit which became due and owing on May 20, 2012 upon the death of the insured.

The opposition filed by Defendant LINCOLN BENEFIT LIFE COMPANY INC. (hereinafter "LBL") is emblematic of the consistent ongoing tactics employed by LBL throughout its dealings with Plaintiff following the sale of the Subject Policies that unequivocally obligated LBL to pay a $29,000,000.00 Death Benefit upon the death of the insured in light of the millions of dollars in premium payments it has collected from Plaintiff. The entire thrust of LBL's primary contention that, notwithstanding the death of Gindi[1], LBL is not obligated to pay the Death Benefit pursuant to the plain terms of the policies until the litigation before this Court to determine the premiums to be paid is concluded, was rejected by

---

[1] Plaintiff refers to its initial Memorandum of Law for full identification of all parties and capitalized terms mentioned herein.

Judge Berman's September 11, 2009 Order[2] when he directed Plaintiff to deposit a lesser sum in escrow (the amount Plaintiff claims is due) without being deemed in violation of the policies' terms and conditions.  Consequently, Judge Berman created a judicial mechanism whereby a specific dollar amount had to be deposited by Plaintiff in escrow on an annual basis in order to ensure the continuation of coverage and the eventual payment of the death benefit during the pendency of this litigation, therefore excusing the insured of any obligation to pay the amount of premium LBL was demanding in order to keep the Subject Policies in full force and effect.  By rejecting LBL's insistence that Plaintiff pay the amount that LBL claimed needed to be paid, under what it characterized as the terms and conditions of the policies, the Court explicitly rejected the notion that Plaintiff would be deemed non-compliant with policy obligations by paying the amount the Court ordered.  Any attempt by LBL to now spin the context in which Judge Berman rendered his decision is not only disingenuous but, to the extent counsel for LBL attempts to submit by way of Affidavit his contentions as to what took place before the Court, this Court should be aware that Mr. Resnik never attended any court conferences and was not involved in any discussions or correspondence with the Court leading to the September 11, 2009 decision.  See Affidavit of Joshua L. Mallin (hereinafter "Mallin Aff.") at ¶ 4, 5 and 6.  As a result, there is absolutely no reason why LBL should be not be compelled to pay Plaintiff the minimum amount owed to Plaintiff under the policies.  The balance of premiums, if any, will naturally have to await the resolution of this trial.

Equally alarming is the callousness LBL shows to the most elemental right a beneficiary has under a life insurance policy – that is, upon the death of the named insured, absent a defense of fraud in the application, a defense not asserted herein, the beneficiary has the absolute

---

[2] A copy of this order is attached as Exhibit M to the Affidavit of Richard M. Resnik ("Resnik Aff.").

unfettered right to receive such death benefits. While Plaintiff fully acknowledges that a dispute exists as to the amount of premium owed, and therefore has graciously offered to allow LBL to put in escrow the death benefit amount equal to the additional premium amount LBL claims is owed[3], it is inconceivable and the ultimate in form over substance to suggest that Plaintiff's motion for partial Summary Judgment should be denied as futile because it has no right to the difference between the amount of the death benefit ($29,000,000.00) and the amount of premiums LBL claims is owed ($18,559,165.00 plus the $8,758,325.00 currently being held in escrow).

Since 1999, Plaintiff has paid an extraordinary amount in premiums, in addition to the monies deposited in escrow, to secure the payment of the Death Benefit upon the death of Gindi. LBL has failed to raise any meaningful argument to justify depriving Plaintiff of these funds. LBL's efforts to tie its unequivocal obligation to pay the Death Benefit into the pending premium dispute before this Court is the textbook definition of "gaming the system".

In a desperate attempt to oppose such a logical and elemental request, LBL, with no basis in fact, law or policy language, contends for the first time that if it is successful, Plaintiff does not merely owe the amount in premiums that LBL contends is due, but that Plaintiff also owes prejudgment interest on that amount, totaling $4,766,236.00. While Mr. Resnik makes this pronouncement with such authority that one may be led to believe that a document exists supporting such relief, the record and the proceedings had to date reveal nothing of the sort. Once again referring to the September 11, 2009 Order, Judge Berman laid out the remedy as to how payment would be made if Defendant was successful upon resolution of trial with <u>no</u>

---

[3] Plaintiff is currently holding a total of $8,788,629.21 in escrow representing the minimum premiums owed to LBL in accord with Judge Berman's 9/11/09 Order. *See* Declaration of Derek M. Zisser (hereinafter "Zisser Dec.") Exhibit L, previously submitted in support of Plaintiff's motion.

3

mention of LBL's entitlement to interest on top of the premiums LBL contends it is owed. Neither is there policy language or caselaw to support such a proposition, given the fact that at no time has LBL asserted any claims against Plaintiff. Accordingly exposed, just like the emperor who had no clothes, this contention amounts to nothing more than Mr. Resnik's naked assertion in an attempt to prevent this Court from ordering what rational and good sense dictate Plaintiff is entitled to at this time.

Finally, with respect to the Delaware Action, LBL merely offers tacit resistance, repeating arguments that were debunked in pre-motion letter briefings to this Court and failing to cite any caselaw justifying the maintenance of the Delaware Action in light of the three year old history of the instant matter and the axiomatic results that will ensue once a determination is made as to the premium owed.

# I
## PURSUANT TO THE TERMS OF THE SUBJECT POLICIES AND JUDGE BERMAN'S SEPTEMBER 11, 2009 ORDER, PLAINTIFF HAS FULLY PERFORMED AND IS THEREFORE ENTITLED TO AMEND ITS COMPLAINT AND FOR SUMMARY JUDGMENT ON ITS PROPOSED AMENDED CAUSE OF ACTION

To the extent that Defendant seeks to portray Plaintiff's proposed amendment to the Complaint as futile because LBL alleges that Plaintiff is in breach of the Subject Policies, and therefore is not entitled to payment of the death benefit, the September 11, 2009 Order of Judge Berman clearly provides a judicial ruling as to the amount of premiums to be paid into escrow under the Subject Policies so that there can be no assertion of "non-payment".

As made clear in the first line of his September 11, 2009 Order, Judge Berman considered the merits of both parties positions as to the proper amount of premium to be paid on an interim basis. Accordingly, the Court reviewed LBL's letter-brief dated September 10, 2009, Mallin Aff., Exhibit D, and LBL's Proposed Order, Resnik Aff., Exhibit L, and rejected its

4

position. Perplexingly, LBL attaches as exhibits the Proposed Orders that led to the September 11, 2009 Order but omits its own September 10, 2009 letter-brief. Mallin Aff., Exhibit D. By failing to attach said letter-brief, which was submitted to the Court along with LBL's Proposed Order, LBL obviously seeks to hide from this Court the undisputable reality that this Court's September 11, 2009 Order not only directed the amount of premiums to be paid into escrow by Plaintiff to continue insurance coverage, but <u>rejected</u> the cornerstone of LBL's current arguments in opposition herein. Resnik Aff., Exhibit M. Due to the Court's clear directives, LBL cannot credibly argue non-performance by the Plaintiff because no additional amount, besides what is currently being held in escrow, could possibly become due and owing until a final judicial determination that resolves the premium dispute. Until that time, Plaintiff is fully compliant with the terms and conditions of the policies, including its obligation to pay insurance premiums under Judge Berman's Order. Accordingly, when Gindi passed away, Plaintiff became entitled to the Death Benefit, despite the existence of a dispute as to the premium owed.[4]

The effect of Judge Berman's September 11, 2009 Order, which ordered Plaintiff to pay premiums "in an amount required for a convertible policy" pending the resolution of the instant litigation and further ordered that Plaintiff would have sixty (60) days after the final resolution of this matter to pay the difference between the premiums determined to be applicable and the premiums paid into escrow, <u>if any</u>, was to eliminate any claim of LBL as to Plaintiff's non-performance based upon its alleged failure to pay the premiums LBL claims were due. Resnik Aff., Exhibit M. Accordingly, LBL's claim that Plaintiff has failed to pay the premiums due under the policies, LBL Memo at p. 8, must be rejected by this Court.

---

[4] The patent unfairness of denying Plaintiff the Death Benefit is clear in light of the fact that LBL received millions of dollars in premium payments in exchange for the continuation of coverage.

Additionally noteworthy is the fact that Judge Berman's September 11, 2009 Order makes no reference to any prejudgment interest on the premium payments that may become due and owing in the unlikely event that LBL is successful in the instant litigation, something that LBL is now, for the first time, claiming. Resnik Aff., Exhibit M. Since this assertion has no basis or support in law or fact given that LBL has never asserted any claims against Plaintiff, it is clear that LBL's lone argument as to why Plaintiff is not entitled to Summary Judgment on its proposed amended claim – Mr. Resnik's imagined right to prejudgment interest, which he asserts creates a factual issue as to the amount of premiums Plaintiff would owe if unsuccessful herein – is meritless. Accordingly, this Court is respectfully urged to grant Plaintiff's motion amending its complaint to add a cause of action for breach of contract with respect to the Death Benefits, no part of which to date has been paid.

## II
## PAYMENT OF THE DEATH BENEFIT UPON THE DEATH OF THE NAMED INSURED IS THE MOST BASIC RIGHT OF A BENEFICIARY UNDER A POLICY OF LIFE INSURANCE

The right of a beneficiary to receive payment of the death benefit under a policy of life insurance is the most basic right afforded under a policy of insurance. *United States v Bess*, 357 US 51, 61 (1958) ("The obligation of an insurer in a policy of life insurance is made up of a number of promises, of which one is to pay to the beneficiary the amount of the insurance-the 'proceeds'"). This fundamental right of a beneficiary to payment, and of an insured to expect payment upon his or her death, is reflected in Insurance Law §3203 (a) (3) which mandates that every life insurance policy sold in New York contain a so-called incontestability clause wherein, if an application for life insurance is not challenged within two years, material misrepresentations made in connection with the application are waived and the policy remains in

full force and effect. *See also*, *Ilyaich v. Bankers Life Ins. Co. of New York*, 47 A.D.3d 614, 614–615 (2d Cir 2008).

While Plaintiff concedes that a premium dispute exists which would create a basis not to compel LBL to pay the entire $29,000,000.00 to Plaintiff at this time, such a scenario offers no justification for paying Plaintiff the difference between the Death Benefit amount ($29,000,000.00) and the amount Defendant claims is due in premiums ($27,317,490.00). Not only does logic and fairness dictate that such payment should be made, but New York's own insurance regulations reflect the public policy of requesting a carrier to pay its insured all undisputed sums earned, rather than leverage such payments against the trial resolution of disputed claims. *See* 11 NYCRR 216.6. In response, LBL contends that this regulation can be ignored by the Court because there is "no private right of action" under 11 NYCRR 216.6. LBL's Memo at p.8, fn. 3. However, Plaintiff is not claiming that LBL's failure to proceed with this claim in good faith under this regulation creates a private right of action. Rather, Plaintiff is merely asserting that 216.6 provides guidance as to how insurance carriers should behave when processing claims in this state. LBL also seeks to escape the equitable relief sought by claiming that Florida, as opposed to New York law, applies to this case. While for the most part New York and Florida law does not differ on basic breach of contract principles, to the extent LBL seeks to avoid the public policy pronouncements contained in 11 NYCRR 216.6 by claiming that New York law does not apply, LBL besides failing to justify why Florida law applies, is just wrong.[5]

---

[5] Where independent diversity jurisdiction exists to support claims brought by a defendant, a District Court must apply the choice of law rules of the state in which that court sits. *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020 (1941). Accordingly, New York law requires courts to apply the law of the "jurisdiction which has the most significant contacts with the matter in dispute (citations omitted)". *Olin Corp. v. Ins. Co. of North America, 743 F. Supp.*

7

LBL mischaracterizes Plaintiff's argument when it calls the undisputed portion of the death benefit which is owed to Plaintiff a "credit or set-off". LBL's Memo, p. 10, fn.4. However, what <u>is</u> undisputed is that, putting the premium dispute aside, $29 million will have to be paid. In an example of no good deed going unpunished, Plaintiff agreed to allow LBL to put the disputed premium and Death Benefit money in escrow. This is hardly the act of a party whose strategy is "intended to force a settlement of a meritless case on the eve of trial." LBL's Memo. at p. 10. LBL's statement is so over the top and inconsistent with what Plaintiff has requested as to not even make it necessary to respond. The arrogance and heavy handedness of the statement causes it to sink of its own weight.

### III
### THE DELAWARE ACTION IS NOT THE "FIRST-FILED" ACTION

LBL's baseless argument that the Delaware Action is the "'first filed' action regarding Plaintiff's demand for immediate payment of the Death Benefit", LBL's Memo at p. 12, is belied by LBL's own complaint, which states that the Delaware Action seeks "a judicial declaration of the rights and obligations of the parties under the Policies pending the determination and conclusion of the [New York] Action." Zisser Dec., Exhibit R at p.9. Any argument that the relief sought in the Delaware Action is separate and distinct from the true first-filed action – the New York Action – is belied by this statement alone.

---

*1044, 1048 (S.D.N.Y. 1990)*.   In the context of insurance contracts, the principal factors considered by New York courts have been: "the location of the insured risk; the insured's principal place of business; where the policy was issued and delivered; the location of the broker or agent placing the policy; where the premiums were paid; and the insurer's place of business." *Olin Corp.* 743 F. Supp. at 1049 (citations omitted).  *See* Affidavit of Isaac Gindi at ¶ 4, 5, 6, 7, 8, 9, 10 and 11; *see also*, Affidavit of Raymond Gindi at ¶ 6, 7 and 11; Affidavit of Stephen Carb at ¶ 6.; Zisser Dec. Exhibit C and Exhibit F.  The fact that Gindi may have physically been in Florida does not support a conclusion that the policies, as Mr. Resnik nakedly asserts, are governed by Florida law.

8

LBL disingenuously and needlessly engages in an exercise of semantics when it argues that this Court is not empowered to "dismiss" or "stay" the Delaware action and relies upon *Nat'l. Equip. Rental, Ltd. v. Fowler*, 287 F.2d 43, 47 (2d Cir. 1961) as support for such an unsupported notion. As the most cursory reading of *Nat'. Equip.*, *Id.*, makes clear, the Second Circuit affirmed the District Court's granting of an injunction which enjoined prosecution of the second-filed claim, as Plaintiff seeks in the instant action. *Id.* at p. 7. It is clear that this Court does have the power to prevent the Plaintiff from incurring the not-insubstantial costs of defending the Delaware Action which, by its nature, is dependent on the New York Action.

LBL's asserted arguments that the relief sought in the Delaware action is not the same as the relief sought herein; that the Delaware declaratory judgment could not have been asserted in New York; and that the complaint in the instant matter does not seek relief with respect to the death benefit, LBL's Memo at p. 13, are mere subterfuge. The Record evidence is undisputed that Gindi passed away on May 20, 2012. Accordingly, Plaintiff timely moved this Court to amend its Complaint. In fact, the argument can be made that the Delaware Action is an anticipatory filing based upon Plaintiff's submitted claim for the death benefit in accordance with the terms of the policies.[6]

Astonishingly, LBL once again cites *Computer Assocs. Int., Inc. V. Altai, Inc.*, 893 F.2d 26 (2d Cir 1990), LBL's Memo at p. 14, but fully fails to address the arguments advanced by Plaintiff as to why *Computer Assocs.* requires the dismissal or enjoinment of the Delaware Action as if Plaintiff had not cited and commented on it in its initial memorandum. As pointed out previously, *Computer Assocs.* established that the second-filed action will not be enjoined if

---

[6] LBL argues that there was no threat of litigation at the time of the filing of the Delaware Action, LBL's Memo at p. 16, but this statement defies logic because the denial of coverage under an insurance policy could and would result in litigation.

9

the issues presented therein were not compulsory counterclaims. *Id.* at 29. The Second Circuit defined compulsory counterclaims as claims where "the essential facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all the issue be resolved in one lawsuit (citations omitted)." *Id.* at 29. The determinative issue in the two litigations considered in *Computer Assocs.*, *supra.*, was the Court's determination that factual issues presented in the second-filed action would <u>not</u> be resolved by the first-filed action. *Id.* at 29. The Complaint filed in the Delaware Action, Zisser Dec., Exhibit R, makes clear that the entire crux of that claim depends upon the factual determinations of this Court[7]. Accordingly, there is no reason to waste judicial resources by forcing Plaintiff to defend the Delaware action which is entirely dependent upon the result of the New York Action.

## **CONCLUSION**

For all the foregoing reasons, Plaintiff respectfully requests that this Court grant Plaintiff's motion in its entirety and enter an Order directing LBL to pay the Death Benefit of $29,000,000.00, pursuant to the policies' terms and conditions, as follows: (1) LBL will deposit $18,559,165.00 into the existing escrow account that currently holds $8,788,629.21 for a total sum of $27,317,490.00 which LBL contends is the premium it is entitled to; (2) the remaining balance of the $29,000,000.00 Death Benefit is $10,440,835.00 which is to be paid to the beneficiary at this time; (3) if Defendant prevails, the entire escrow sum of $27,317,490.00 will be paid to LBL (subject to adjustments); and (4) if Plaintiff prevails, then Defendant will be paid $8,788,629.21 (subject to adjustments) and the balance of $18,528,860.79 is paid to the beneficiary and for any such further relief as this Court may deem just and proper.

---

[7] Equally misguided, inapposite and astonishing is LBL's reliance on *Smith v. S.E.C.*, 129 F.3d 356 (6th Cir 1997), a case where the first-filed action merely concerned the use and suppression of a wiretap recording and the second-filed action was a civil enforcement action by the S.E.C. *Id.* at pp. 359–360.

Executed: New York, New York
August 9, 2012

                                    WEG AND MYERS, P.C.
                                    *Attorneys for Plaintiff*

                           By:   /s Dennis T. D'Antonio
                                   Dennis T. D'Antonio (DD 0973)
                                   Joshua L. Mallin (JM 0474)
                                   Derek M. Zisser (DZ 1984)
                                  Federal Plaza
                                  52 Duane Street, 2nd Floor
                                  New York, New York 10007
                                  (212) 227-4210

To:   Seyfarth Shaw, LLP                 Morris James, LLP
       620 Eighth Avenue                  P.O. Box 2306
       New York, New York 10018        Wilmington, DE 19899-2306

       Attn:  Richard Resnik, Esq.          Attn:  P. Clarkson Collins, Esq.

Docket No 09-CV 2980 ALC KNF

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

---

G INVESTORS HOLDING LLC as successors in interest to STEPHEN CARB AS TRUSTEE OF LOLLYTOGS, INC. TRUST

                                                          Plaintiff,

-against-

LINCOLN BENEFIT LIFE COMPANY, INC.,

                                                          Defendant.

---

**PLAINTIFF'S REPLY MEMORANDUM OF LAW
IN FURTHER SUPPORT OF ITS MOTION TO DISMISS
THE DELAWARE PLEADING, TO AMEND THE
COMPLAINT AND FOR PARTIAL SUMMARY JUDGMENT**

---

*Weg and Myers, P.C.*
Attorney for Plaintiff

Office and Post office Address, Telephone
Federal plaza
52 Duane Street
NEW YORK, NEW YORK 10007
(212) 227-4210

---