09-103.01

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- x
G INVESTORS HOLDING LLC as successors in :
interest to STEPHEN CARB AS TRUSTEE OF :
LOLLYTOGS, INC. TRUST, :
: 09-CV-2980 (ALC)
               Plaintiff, :
vs. :
:
LINCOLN BENEFIT LIFE COMPANY INC., :
:
              Defendant. :
---------------------------------------- x

## PLAINTIFF'S REQUESTS TO CHARGE

*All citing references are to the 6th Edition of the Federal Jury Practice and Instructions (Civil).*

**PROPOSED CHARGE #1** - Federal Jury Practice & Instructions Civil § 101.01: Opening Instructions

**PROPOSED CHARGE #2** - Federal Jury Practice & Instructions Civil § 101.02: Order of Trial

**PROPOSED CHARGE #3** – Federal Jury Practice & Instructions Civil § 101.03 (Modified): Claims and Defenses

      The positions of the parties can best be summarized as follows:

      Plaintiff claims that, at all times, Defendant knew Plaintiff was seeking to purchase life insurance policies with conversion rights and that Defendant intended to issue to Plaintiff policies with conversion rights. Plaintiff's further claims that, upon receiving the life insurance policies, it sought to confirm the existence of conversion rights by contacting Defendant's customer service department as specifically set forth in the policies. Plaintiff further claims that Defendant responded to Plaintiff's pointed inquiries and affirmatively confirmed the existence of conversion rights by way of a July 13, 2000 facsimile sent to Plaintiff that the policies

contained conversion rights. To the extent that there is a question whether Defendant initially intended to issue said policies with conversion rights, it is Plaintiff's further contention that Stan Shelley, an officer of Defendant, at the very least modified the policies sold by Defendant so as to abolish the age-related triggering event when he provided for conversion rights of each policy through the entire ten-year level premium term in the July 13, 2000 facsimile transmitted by Lydia Trevino on behalf of Stan Shelley and Defendant. Plaintiff further contends that, as a matter of equity, Defendant should be precluded from now relying on the age triggering event and claiming that the policies do not allow for conversion because Plaintiff reasonably and detrimentally relied on Defendant's conduct including its multiple affirmative actions which confirmed the existence of conversion rights such as the July 13, 2000 facsimile, a December 16, 2002 email wherein Defendant represented to Plaintiff that conversion rights did in fact exist through the ten-year level premium term until 2009. Plaintiff contends that it relied on those representations and, had it been told that there were no conversion rights, it would have replaced the policies immediately. When Defendant changed its position and denied conversion rights in 2003, there were no suitable insurance products available that would fulfill Plaintiff's needs. As a result, Plaintiff claims that it relied upon Defendant's statements to its detriment. Plaintiff further claims that upon the death of the insured on or about May 20, 2012, the death benefit became immediately due and owing.

    Plaintiff asserts claims for breach of contractual rights relating to Defendant's refusal to allow Plaintiff to convert the policies and breach of contract relating to Defendant's refusal to pay the death benefit of the policies upon the death of the insured

    Defendant claims that since Gindi was more than seventy (70) years old when the policies were issued there was never any right to convert these policies from term insurance to

whole life or universal life policies. Defendant further denies that there was every any modification of the conversion language in the policies and that the July 13, 2000 facsimile was merely a misrepresentation of the conversion provisions in the policies. Defendant argues that the plain meaning of the language employed in the policies must be enforced, meaning that because Gindi was already seventy-five (75) years old at the time the Policies were issued, Plaintiff had no right to convert the policies.

Defendant also contends that even if there was such a modification by the July 13, 2000 facsimile, the parties subsequently agreed by letter dated February 26, 2003 that Plaintiff would be permitted a one-time opportunity to convert as a one-time client accommodation. Defendant contends that Plaintiff accepted this offer, but ultimately chose to reinstate the current policies and has no right to convert. Plaintiff contends that it rejected this offer and it is entitled to pursue its rights under the policies.

**PROPOSED CHARGE #4** -Federal Jury Practice & Instructions Civil § 101.10: Province of Judge and Jury

**PROPOSED CHARGE #5** - Federal Jury Practice & Instructions Civil § 101.11: Jury Conduct

**PROPOSED CHARGE #6** - Federal Jury Practice & Instructions Civil § 101:13: Juror use of electronic technology

**PROPOSED CHARGE #7** - Federal Jury Practice & Instructions Civil § 101:15: Notetaking—Permitted

**PROPOSED CHARGE #8** - Federal Jury Practice & Instructions Civil § 101.18: Questions by Jurors - Prohibited

**PROPOSED CHARGE #9** - Federal Jury Practice & Instructions Civil § 101.30: Judge's Questions to Witnesses

**PROPOSED CHARGE #10** - Federal Jury Practice & Instructions Civil § 101.40: Evidence in the Case

**PROPOSED CHARGE #11** - Federal Jury Practice & Instructions Civil § 101.41: Burden of Proof

**PROPOSED CHARGE #12** - Federal Jury Practice & Instructions Civil § 101.42: Direct and Circumstantial Evidence

**PROPOSED CHARGE #13** - Federal Jury Practice & Instructions Civil § 101.43: Credibility of Witnesses

**PROPOSED CHARGE #14** - Federal Jury Practice & Instructions Civil § 101.44: What is Not Evidence

**PROPOSED CHARGE #15** - Federal Jury Practice & Instructions Civil § 101.46: Admissions in Pleadings

**PROPOSED CHARGE #16** - Federal Jury Practice & Instructions Civil § 101.48: Admissions in Stipulations

**PROPOSED CHARGE #17** - Federal Jury Practice & Instructions Civil § 101.11: Jury Conduct

**PROPOSED CHARGE #18** - Federal Jury Practice & Instructions Civil § 101.49: Ruling on Objections

**PROPOSED CHARGE #19** - Federal Jury Practice & Instructions Civil § 102.23: Deposition as Substantive Evidence

**PROPOSED CHARGE #20** - Federal Jury Practice & Instructions Civil § 102.70: Judge's Comments to Lawyer

**PROPOSED CHARGE #21** - Federal Jury Practice & Instructions Civil § 102.71: Objections and Rulings

**PROPOSED CHARGE #22** - Federal Jury Practice & Instructions Civil § 102.72: Judge's Questions to Witnesses

**PROPOSED CHARGE #23** - Federal Jury Practice & Instructions Civil § 102.73: Judge's Comments on Certain Evidence

**PROPOSED CHARGE #24** - Federal Jury Practice & Instructions Civil § 103.02: Use of Notes

**PROPOSED CHARGE #25** - Federal Jury Practice & Instructions Civil § 103.04: Juror Use of Electronic Communication Technologies

**PROPOSED CHARGE #26** - Federal Jury Practice & Instructions Civil § 103.12: All Persons Equal Before the Law: Organizations

**PROPOSED CHARGE #27** - Federal Jury Practice & Instructions Civil § 103.30: Evidence in the Case

**PROPOSED CHARGE #28** - Federal Jury Practice & Instructions Civil § 103.31: Consideration of the Evidence – Corporate Party's Agents and Employees

**PROPOSED CHARGE #29** - Federal Jury Practice & Instructions Civil § 103.33: Court's Comments Not Evidence

**PROPOSED CHARGE #30** - Federal Jury Practice & Instructions Civil § 103.34: Questions Not Evidence

**PROPOSED CHARGE #31** - Federal Jury Practice & Instructions Civil § 103.50: Election of Foreperson; Duty to Deliberate; Communication with Court; Cautionary; Unanimous Verdict; Verdict Form

**PROPOSED CHARGE #32** - Federal Jury Practice & Instructions Civil § 104.01: Preponderance of the Evidence

**PROPOSED CHARGE #33** - Federal Jury Practice & Instructions Civil § 104:03: Burden of Proof Where Some Jurors Have Served on Jury in Criminal Case

**PROPOSED CHARGE #34** - Federal Jury Practice & Instructions Civil § 104.04: "If You Find" or "If You Decide"

**PROPOSED CHARGE #35** - Federal Jury Practice & Instructions Civil § 104.05: "Direct" and "Circumstantial" Evidence – Defined

**PROPOSED CHARGE #36** - Federal Jury Practice & Instructions Civil § 104.20: Inferences

**PROPOSED CHARGE #37** - Federal Jury Practice & Instructions Civil § 104.21 (Modified): Presumption of Regularity

Unless and until outweighed by evidence to the contrary, you may find an official duty has been regularly performed, private transactions have been fair and regular, the ordinary course of business or employment has been followed, things have happened according to the ordinary course of nature and the ordinary habits of life, and the law has been obeyed. You should not weigh a presumption as evidence. If evidence to counter the presumption is introduced, the case should be considered solely on the evidence. Clayton v. Burston, 493 F.2d 429, 432 (5th Cir.1974).

**PROPOSED CHARGE #38** - Federal Jury Practice & Instructions Civil § 104.22: Finding That Official Report Made

**PROPOSED CHARGE #39** - Federal Jury Practice & Instructions Civil § 104.25: Failure to Call Available Witness

**PROPOSED CHARGE #40** - Federal Jury Practice & Instructions Civil § 104.26 (Modified): Failure to Produce Available Evidence

In the present lawsuit, on December 17, 2010 Plaintiff served upon Defendant a request for the production of documents wherein Plaintiff requested Defendant to produce, amongst other things, Defendant's complete underwriting file in connection with the insured, Samuel Gindi, and the life insurance policies at issue. Plaintiff also requested from Defendant the production of any and all underwriting manuals and guidelines published, maintained or used by Defendant regarding the various types of life insurance policies. On March 4, 2011, Defendant responded to such requests by indicating that all responsive documents and information, if any, were previously produced or would be produced. It is Plaintiff's contention that, notwithstanding Plaintiff's requests and Defendant's representations, Defendant failed to produce any underwriting materials or documents pertaining to the issuance of the policies in question and/or the eligibility for conversion rights, or certain documents kept on the "electronic notepad" internal note taking system maintained by Defendant. It is Plaintiff's further contention that said materials and documents should have been under Defendant's control or in Defendant's possession, should have been reasonably available to Defendant, were not reasonably available to Plaintiff absent Defendant's production of these documents and, thus, should have been produced in accordance with Plaintiff's request and the requirements imposed by Federal Rule of Civil Procedure 26. Bank of Crete S.A. v. Koskotas, 733 F.Supp. 648 (S.D.N.Y. 1990); U.S. v. Philatelic Leasing, Ltd., 601 F.Supp. 1554 (S.D.N.Y. 1985), aff'd 794 F.2d 781 (2d Cir. 1986); Consolidated Rail Corp. v. Nevins-Petrillo Warehouse & Distribution Systems, Inc., 619 F.Supp. 900 (S.D.N.Y. 1983)

If, upon all the evidence, you are satisfied that said materials and documents should have been under Defendant's control or in Defendant's possession, should have been reasonably available to Defendant, were not reasonably available to Plaintiff absent Defendant's production of these documents and, thus, should have been produced in accordance with Plaintiff's request, then you may infer that the evidence would be unfavorable to Defendant as the party who could have produced it and did not.

**PROPOSED CHARGE #41** - Federal Jury Practice & Instructions Civil § 104.54: Number of Witnesses

**PROPOSED CHARGE #42** - Federal Jury Practice & Instructions Civil § 104.70: Requests for Admission

**PROPOSED CHARGE #43** - Federal Jury Practice & Instructions Civil § 105.01: Discrepancies in Testimony

**PROPOSED CHARGE #44** - Federal Jury Practice & Instructions Civil § 105.02: Use of Depositions as Evidence

**PROPOSED CHARGE #45** - Federal Jury Practice & Instructions Civil § 105.04: Impeachment – Inconsistent Statement or Conduct (*falsus in uno falsus in omnibus*)

**PROPOSED CHARGE #46** - Federal Jury Practice & Instructions Civil § 105.06: Impeachment – Bad Reputation for Truth and Veracity

**PROPOSED CHARGE #47** - Federal Jury Practice & Instructions Civil § 105.09: Effect of Prior Inconsistent Statement or Conduct

**PROPOSED CHARGE #48** - Federal Jury Practice & Instructions Civil § 105.10: Effect of Refusal of Witness to Answer

**PROPOSED CHARGE #49** – Federal Jury Practice & Instructions Civil § 106.01: Duty to Deliberate

**PROPOSED CHARGE #50** - Federal Jury Practice & Instructions Civil § 108.01: Agents of Corporation

**PROPOSED CHARGE #51** – Breach of Contractual Rights

In the present lawsuit, Plaintiff contends that it was Defendant's intention, at all times, to issue two life insurance policies which contained conversion rights. It is also Plaintiff's contention that it intended, at all times, to procure said policies with conversion rights and that Plaintiff believed said policies were sold with conversion rights. It is Plaintiff's further contention that, consistent with Plaintiff's belief, by way of a July 13, 2000 facsimile and December 16, 2002 e-mail to Plaintiff, Defendant affirmatively confirmed that the policies sold to Plaintiff had conversion rights.

If, upon all the evidence, you are satisfied that Defendant did intend to issue said policies with conversion rights, then you must find that Defendant breached said policies by refusing to convert the policies upon Plaintiff's request. See Abbott Labs., Inc. v. Gen. Elec. Capital, 765 So.2d 737, 740 (Fla. 5th DCA 2000) ("The elements of a breach of contract action are: (1) a valid contract; (2) a material breach; and (3) damages.").

**PROPOSED CHARGE #52** – Modification

If it is determined that the policies as sold did not provide for conversion rights, then it is Plaintiff's contention that Stan Shelley, an officer of Defendant, modified the policies sold by Defendant so as to provide for conversion rights of each policy through the entire ten-year level premium period, as memorialized in the July 13, 2000 facsimile transmitted by Lydia Trevino on behalf of Stan Shelley and Defendant.

Insurance contracts are construed in accordance with the plain language of the policy to reflect the intentions of the contracting parties. Taurus Holdings, Inc. v. U.S. Fidelity & Guar. Co., 913 So.2d 528 (Fla.2005); Swire Pac. Holdings, Inc. v. Zurich Ins. Co., 845 So.2d 161 (Fla.2003). Both parties concede that the policies allow for modification. The pertinent policy provision reads as follows: "Only our officers have authority to change this contract. No agent may do this. Any change must be written." It is Plaintiff's contention that, by Defendant's own choosing, the policies do not expressly require that any such writing be signed by the officer effectuating the change. Taurus Holdings, Inc. v. U.S. Fidelity & Guar. Co., 913 So.2d 528 (Fla.2005); Swire Pac. Holdings, Inc. v. Zurich Ins. Co., 845 So.2d 161 (Fla.2003); Fla. Stat. §627.452; Fla. Stat. §627.460.

Both parties concede that the July 13, 2000 facsimile constitutes a writing. Thus, if upon consideration of all the evidence you are satisfied that one of Defendant's officers authorized a change to the policies, you must decide that the policies at issue were modified to provide for conversion rights through the entire ten-year level premium period. However, if you are not satisfied that one of Defendant's officers authorized a change to the policies, you must decide that the policies at issue remain as written.

In the present lawsuit, Plaintiff contends that Stan Shelley, Defendant's Vice President of Customer Service, authorized a change to the policies and that such change was memorialized in the July 13, 2000 facsimile. Plaintiff further contends that, in transmitting the July 13, 2000 facsimile, Lydia Trevino was acting on behalf of Stan Shelley with either actual authority or apparent authority and, consequently, any and all representations made by Trevino must be imputed to Shelley and ultimately Lincoln Benefit. Actual authority is authority that is actually granted, whether expressly or impliedly. Restatement (Second) of Agency §7. A

10

finding of actual authority requires evidence that the principal acknowledged that the agent will act for him, that the agent accepted responsibility of representing the principal in connection with the undertaking and that the principal retained the right to control the agent's actions. Villazon v. Prudential Health Care Plan, Inc., 843 So.2d 842 (Fla.2003); Restatement (Second) of Agency §1. Apparent authority is authority that, though not actually granted, the principal knowingly permits the agent to exercise or which the principal has apparently delegated to the agent. Restatement (Second) of Agency §8; Borg-Warner Leasing Div. of Borg-Warner Acceptance Corp. v. Doyle Elec. Co., 733 F.2d 833 (11th Cir. 1984) (applying Florida law). In deciding this issue, you may consider whether the Defendant placed Lydia Trevino in such a situation or position that a person of ordinary prudence familiar with business usage and the nature of the particular business would be justified in assuming that this person had authority to perform a particular act or make particular representations and deals with the apparent agent upon that assumption. From these circumstances, if you find that the Plaintiff was justified in assuming that Lydia Trevino had authority to make the representations she did, then you may find that Stan Shelley and Defendant are bound by the representations of Lydia Trevino as their agent. Federal Jury Practice & Instructions Civil § 108.03: Apparent Authority.

If, upon all the evidence, you are satisfied that Stan Shelley authorized a change to the policies and/or that Lydia Trevino was acting on behalf of Stan Shelley with either actual authority or apparent authority, you must decide that one of Defendant's officers authorized a modification of the policies and, consequently, that the policies at issue were modified to provide for conversion rights through the entire ten-year level premium period.

Finally, if you cannot determine what the policies require after you have reviewed all of the relevant evidence, then the law allows that if you find both of these competing interpretations to be reasonable, the policy provision is considered ambiguous and must be construed in favor of the insured, Plaintiff, and strictly against the drafter, Defendant. Taurus Holdings, Inc. v. U.S. Fidelity & Guar. Co., 913 So.2d 528 (Fla.2005); Swire Pac. Holdings, Inc. v. Zurich Ins. Co., 845 So.2d 161 (Fla.2003).

**PROPOSED CHARGE #53** - Estoppel

In the present lawsuit, it is Plaintiff's contention that Defendant is obligated to provide Plaintiff with conversion rights because Plaintiff detrimentally relied and acted upon Defendant's affirmative representations concerning the existence of conversion rights under the policies. Estoppel arises in the interest of fairness where one party justifiably relies on the words or conduct of another party and, in so relying, changes his position to his detriment. Estoppel should be imposed to prevent the enforcement of rights that would amount to an injustice upon the person against whom enforcement is being sought when that person acted in reliance upon the words or acts of the enforcing party. In the context of insurance, estoppel may preclude an insurer from asserting what may be an otherwise legitimate policy defense if an insurer or its agent misrepresents, even though innocently, coverage of the insurance contract to an insured and the insured can show that he reasonably relied on this information and has now been prejudiced by the insured's actions. Peninsular Life Ins. Co. v. Wade, 425 So.2d 1181 (Fla. 2d. DCA 1983); Am. States Ins. Co. v. McGuire, 510 So.2d 1227 (Fla. 1st DCA 1987).

If, upon all the evidence, you are satisfied that Plaintiff reasonably and detrimentally relied on Defendant's affirmative representations concerning the existence of conversion rights

under the policies through the entire ten-year level premium period, you must decide that Defendant cannot now claim that no such conversion rights existed under the policies. However, if you are not satisfied that Plaintiff reasonably and detrimentally relied on Defendant's affirmative representations concerning the existence of conversion rights under the policies, you must decide that Defendant is not estopped from claiming that no such conversion rights existed under the policies.

**PROPOSED CHARGE #54** - Waiver

It is Plaintiff's further contention that Defendant is obligated to provide Plaintiff with conversion rights because Defendant engaged in at least three separate affirmative acts in which it waived any right it might have had to deny Plaintiff's conversion of the life insurance policies at issue. Waiver is the voluntary relinquishment of a known right. It is Plaintiff's contention that Defendant voluntary relinquished any alleged right that it may have had to deny Plaintiff's conversion of the policies by the July 2000 fax and the December 16, 2002 email, both of which confirmed the existence of conversion rights under the policy, and the August 14, 2007 conversion illustrations it furnished to Plaintiff. SourceTrack, LLC v. Ariba, Inc., 958 So.2d 523, 527 (Fla. 2d DCA 2007); Goodwin v. Blu Murray Ins. Agency, 939 So.2d 1098, 1104 (Fla. 5th DCA 2006)

If, upon all the evidence, you are satisfied that Defendant voluntarily and knowingly waived any right it may have had to deny Plaintiff's conversion of the policies, you must decide that Defendant waived its right to deny conversion of said policies.

**PROPOSED CHARGE #55** – Breach of Contract Relating to the Death Benefit

Plaintiff further contends that the life insurance policies imposed an obligation upon Defendant to pay to the beneficiaries the death benefit upon the death of the insured. Plaintiff

further contends that this obligation was ongoing irrespective of any dispute relating to the premiums to be paid under the policies.

If, upon all the evidence, you are satisfied that Defendant was obligated to pay the death benefit to the beneficiaries upon the death of the insured, then you must find that Defendant breached the life insurance policies when it refused to pay the death benefit upon receipt of notification of the insured's death in accord with the procedures enumerated in the policies. See Abbott Labs., Inc. v. Gen. Elec. Capital, 765 So.2d 737, 740 (Fla. 5th DCA 2000) ("The elements of a breach of contract action are: (1) a valid contract; (2) a material breach; and (3) damages.").

**PROPOSED CHARGE #55** – Unclean Hands

To the extent that Defendant has argued that Plaintiff allegedly accepted its one-time offer in 2003 to convert the policies to Universal Life policies and then, in exercising its "free look" rights surrendered its conversion rights, Plaintiff contends that Defendant's own wrongful conduct created the situation that led to this seemingly magnanimous offer. Plaintiff contends that Defendant's 2003 offer was based on Defendant's incorrect, contrary and sudden pronouncement that the policies did not have conversion rights. Accordingly, because Defendant created the situation that led to any alleged acceptance of the offer to convert, it cannot now rely upon its own incorrect pronouncement which predicated that transaction as a defense to the current action. See Roberts v. Roberts, 84 So.2d 717 (Fla.1956).

If, upon all the evidence, you are satisfied that Defendant's wrongful conduct created the 2003 conversion offer and that that wrongful conduct caused Plaintiff to accept said offer, even though Plaintiff ultimately rejected it, you must find that Defendant is guilty of unclean hands

and cannot rely on the alleged 2003 conversion and the surrounding events as a defense to this action.

Dated: New York, New York
       October 24, 2012

                                  Respectfully submitted,

                                  WEG AND MYERS, P.C.,
                                  *Attorneys for Plaintiff*

                                  By:_____
                                      Dennis T. D'Antonio (DD 0973)
                                      Derek M. Zisser (DZ 1984)
                                  52 Duane Street
                                  New York, New York 10007
                                  Tel:    (212) 227-4210
                                  Fax:   (212) 349-6702

Docket No 09-CV 2980 ALC KNF

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

G INVESTORS HOLDING LLC as successors in interest to STEPHEN CARB AS TRUSTEE OF LOLLYTOGS, INC. TRUST

　　　　　　　　　　　Plaintiff,

-against-

LINCOLN BENEFIT LIFE COMPANY, INC.,

　　　　　　　　　　　Defendant.

PLAINTIFF'S REQUEST TO CHARGE

*Weg and Myers, P.C.*
Attorney for Plaintiff

Office and Post office Address, Telephone
Federal plaza
52 Duane Street
NEW YORK, NEW YORK 10007
(212) 227-4210